JOSEPH REARDON, Administrator, Appellant, v. ALDEN M. HERMANSEN et al., Appellees.

No. 43523.

SEPTEMBER 21, 1937.

1208

Kelly & Kelly and Cory & Sackett, for appellant.

Cornwall & Cornwall and James W. Fay, for appellees.

Parsons, J.—This case comes to us on a very short record. The trial in the district court resulted in a verdict by the jury in favor of the defendants, after submission of the case by the court. The abstract, with three pages of index, covers only 39 pages, and an amendment thereto covers ten pages. In the abstract fifteen of the thirty instructions given by the court are set out, the others being omitted.

The plaintiff in this case, Joseph Reardon, was the administrator of the estate of James J. Walsh, and the defendants were Alden M. and Albert M. Hermansen. Albert M. Hermansen was the father of Alden M. Hermansen; he was also the owner of a Chevrolet car which, with the father's consent, was driven to the Clay County Fair at Spencer, Iowa, on September 11, 1934, by Alden M. Hermansen, who was accompanied by one Glen Jondahl. These two started on their return trip to Ruthven, about eleven o'clock, p. m., on September 11, 1934. The lights on the car were working, and were on; the driver could see 100 feet ahead of the car, and the road they traveled was highway 18. The car was driven at about 40 to 50 miles an hour, and at a place on the highway between the Country Club and Woodcliff, the driver of the car saw another automobile approaching from the east, traveling at about the same rate of speed he was traveling. The driver watched the road, and said:

"I was watching the road ahead. When the other car was 100 to 125 feet away from me, I looked at it and then at the black line in the center of the pavement, and then we hit the bicycle. I did not know there was a bicycle ahead of me. At no time before the crash did I see any red light or red flare or reflector ahead of me; nothing but the two lights of the oncoming car. I didn't see any red light or light of any kind on my side of the road ahead of me where the bicycle must have been. I looked at the road ahead; I looked at the car and the line, and the other car and my car were side by side and almost instantly

something hit my car; I didn't know what it was. I stopped my car, turned around and went back. I found it was Mr. Walsh who had been hurt; he was lying at the south side of the road. I recognized him. A man was there by Mr. Walsh when I got back. It seemed as though the crash came just as the two cars passed.''

On cross-examination he said he was positive the lights were down at the time of the accident; that he could see approximately 100 feet ahead; that he was looking ahead; and that it was his habit to look down and see that everything was going to be all right before he passed another car. That when he looked at that car he looked right at the road again; that it was only an instant when he wasn't watching the road 100 feet ahead of him. Hermansen could not say whether it was light or dark; but that there was no fog, rain or snow or anything of that kind.

On redirect examination the younger Hermansen said, ''Just before the accident I momentarily glanced at the other car; I looked to see it was in its right place for sure and to be certain that we could pass without colliding with it; I also glanced at the black lines; before I got my eyes focused on the road ahead this collision occurred. It occurred almost instantly when the cars passed.''

The testimony of Glen Jondahl was practically the same as Hermansen's. He said, however, they did not have any difficulty seeing ahead without headlights that night. Could see for a distance of at least approximately 100 feet, possibly farther; that he thought they could see about 150 feet ahead of the car with the aid of the lights. He said his attention was diverted from the paved highway ahead of their car just the matter of an instant, when he glanced at the other car; and that at the instant of passing the other car their car was in the center of their portion of the road, between the double strip down the center of the paving, and the south side or edge of the pavement.

It is said in the abstract:

''The evidence of the following witnesses for the defendants is omitted from the abstract as not material to the issues raised on this appeal, but their names and the nature of their testimony are shown in brief:

''Dorothy Dahl, Ruth Johnson, Carmalita Cohrt riding together in an automobile, overtook and passed a man riding a bi-

cycle eastward about three-quarters of a mile west of the scene of the accident and a few minutes before it occurred; did not see red reflector on the rear of the bicycle. Only man on a bicycle they passed.''

Joseph Schmidt, driving his car eastward, overtook and passed a man riding a bicycle eastward about three-quarters of a mile west of the scene of the accident, a few minutes before it occurred; did not see a red reflector on rear of bicycle, only a man on bicycle.

Plaintiff in rebuttal showed that Mildred De Koster was riding in an automobile that overtook and passed a man riding on a bicycle eastward, about a half mile west of the scene of the accident, and a few minutes before it occurred; saw a red reflector on the rear of bicycle.

Albert Swart talked to the decedent in Spencer the morning of the accident; decedent exhibited to him a new red reflector and electric lamp for his bicycle which he told him he had just purchased.

There was also offered the testimony of the manager of a store at Spencer to the effect that a red reflector of the make and type of Exhibit B, was sold to a man. A salesman employed in the same store testified that he sold a red reflector and an electric lamp, similar to Exhibits B and C, to an unidentified customer on the morning of the accident, and it was the only store in Spencer which carried such a lamp. Exhibits B and C were testified to by the sheriff of Clay County, concerning his finding of the broken bicycle, Exhibit A; the bent and broken reflector frame, Exhibit B, attached to the mud guard over the rear wheel of the bicycle; and the broken electric lamp, Exhibit C, found near the bicycle, and bits of broken red glass.

A traveling salesman, Teslow, testified that on the evening of September 11, 1934, just prior to the accident he was driving on the highway No. 18, west of the Woodcliff corner, and he passed a man riding on a bicycle, going east on the highway. He saw a white light on the front of the bicycle. This man was on the pavement near the south edge, and riding straight down the pavement. The witness said he passed an automobile with its lights on proceeding east on the south part of the pavement, following the bicycle; that the car was about 75 or 100 feet west of the man on the bicycle, going about 35 or 40 miles per hour, but

after passing the car he heard a crash, stopped his car as soon as he could, turned around on the pavement and went back, and found a man lying on the pavement near a broken bicycle.

Roy Lipps was with this witness, and he stated that the man struck was riding a bicycle, and that they passed an automobile approaching from the west about 250 or 300 feet behind the bicycle; then they heard a noise like a stone thrown through a window. Teslow stopped his car and turned around and went back, then went to Spencer for help. Lipps said about the same time a man came from the east and came over and said he was the one who ran into the man on the bicycle; his car had its windshield and right headlamp broken; that the accident happened around 11 o'clock, p. m.

The record shows that the decedent, James J. Walsh, was the man killed or found dead at the scene of the accident.

The petition in the case set forth twelve specifications of negligence. The answer was a general denial, with an admission as to Hermansen driving the automobile, about the place stated in the petition, and that the accident occurred there when James J. Walsh was injured and subsequently died; and further set forth that Alden M. Hermansen was not guilty of negligence, but stated that James J. Walsh was guilty of negligence which was the proximate cause of the accident, and that the defendants were not liable therefor.

At the close of the evidence the defendants filed a motion to withdraw from consideration of the jury certain specifications of negligence. Same were sustained, and others overruled, but are not set out in the abstract. They also filed a motion to withdraw from consideration of the jury plaintiff's claim for damages on account of wrongful death of decedent. This was overruled, but not appealed from.

The defendant then made a motion for directed verdict, saying that on the whole record the defendants ask the court to dismiss the plaintiff's petition and direct a verdict for the defendants and against the plaintiff, because there was not sufficient evidence to submit any of the questions raised in plaintiff's petition to the jury, and if a verdict were returned by the jury for the plaintiff, it must of necessity be set aside under the record made by the plaintiff. The court said: "I think there is a jury question here, and that it is clearly the duty of the court to submit the case to the jury, and so the motion will be overruled."

Albert Hermansen filed a separate motion to dismiss and this was overruled, but it is not material here. No requests for instructions were filed with the court, and the court then gave its instructions, consisting of thirty separate instructions. On the 22d day of November, 1934, the jury returned the following verdict:

"We, the jury, find for the defendants."

Judgment was entered on the verdict for costs. Motion for new trial and exceptions were filed, on seven grounds. The court overruled all.

The abstract states that the ruling on all was waived, except the court erred in giving to the jury instructions 6, 8, 11, 13, 14, 15, 16, and 17; that the court erred in submitting to the jury the defense issue of diverting circumstances, for the reason same is not pleaded in defendants' answer.

Plaintiff also filed objections and exceptions to instructions 6, 8, and 11, which were waived. Exceptions were taken to instruction 13 for the reason the court failed to distinctly instruct the jury that a failure on defendants' part to observe section 5029 constituted negligence as a matter of law, unless a legal excuse were shown for such failure. Plaintiff also excepted to instruction 14 for the reason that the court nowhere in the same instructed the jury that a failure to observe section 5022 constituted negligence as a matter of law, unless a legal excuse were shown for such failure. Plaintiff excepted to instruction 16 practically on the ground that it was the duty of the defendant to see the deceased on the highway; and excepted to instruction 17, in that the court made unwarranted comments upon the evidence.

These were all overruled, and judgment was entered on the verdict against the plaintiff for costs.

The appellant, in the brief, objects to the giving of instruction 13 which was on the specifications of negligence, relating to the speed at which Hermansen was driving, and charging that it was excessive, and that he could not stop his car within the assured clear distance ahead; that it was Hermansen's duty to observe section 5029 of the code, which was set out in the 12th instruction given by the court.

Section 5029, in brief, requires that a car should be driven at a careful and prudent speed, not greater than nor less than is

reasonable and proper, having due regard to the traffic, surface and width of the highway, etc.; and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead.

In the argument made upon this it is said this instruction is erroneous, in that it was not sufficient to distinctly emphasize to the jury that as a matter of law a failure to observe provisions of section 5029 relative to speed of a motor vehicle constituted negligence.

■■■ The argument criticizes instruction 17, in which it is said the court attempted to instruct on diverting circumstances relative not only to the speed statute, but also relative to the passing statute, and submitted a brief of authorities upon this. We have carefully examined this instruction and all the authorities cited, and can see nothing in this argument whatever. The law as laid down by the court is proper.

The brief then argues that the instruction was erroneous in that it wholly failed to inform the jury that a failure on defendants' part to observe the provisions of section 5022 of the Code, relative to turning to the left when overtaking another vehicle, constituted negligence as a matter of law. This is true, and there is cited the case of Andersen v. Christensen, 222 Iowa 177, 268 N. W. 527. That case was written by the writer of this opinion.

In the Christensen case, the defendant was attempting to pass the Andersen car in broad daylight, while on the pavement, going around a curve, and traveling at a speed of 30-35 miles an hour. It was in plain view; it was seen; there were no diverting circumstances, and the defendant undertook to pull in ahead, too close to the car with which it collided. We see no application of the rule laid down in that case, to the facts in this case, and we see no conflict in the two instructions.

The principal objection, however, of the plaintiff is as to instruction 17 of the court, which says:

"It is the contention of the defendant that at the time of the collision he was about to meet and pass a car coming from the east on the pavement, and that his attention was diverted from the road in front of him to the oncoming car and the black lines that marked the center of the pavement. This is urged as an excuse for his alleged failure to obey sections 5022 and 5029 quoted."

1214

■■■ When we come to consider in this case that all the instructions of the court are not here, and that the instructions not here necessarily bear upon some of the questions discussed, it is difficult to see how any error can be predicated on anything done by the court. Under the record as it stands, under proper instructions by the court, had the jury found either way upon these questions, the court should not disturb it, because there was, as the judge remarked, a jury question in the case.

■■■ The jury had a perfect right to find, under this record, contributory negligence on the part of the plaintiff; that there was such a failure of evidence on the part of the plaintiff that the jury might very well have found that he was not traveling upon the highway with the lights required by the statute displayed on his bicycle. True, somebody in Spencer had sold an outfit to somebody he did not know; true, sometime afterward red glass was found on the pavement somewhere around the neighborhood where the accident took place. These facts did not compel a finding that the bicycle was properly equipped, and if it were not properly equipped, then the jury might very well have found contributory negligence. The jury might have found, possibly, under the record in this case, for the defendant on the theory of diverted attention; but whatever the jury found in this record along this line, we could not disturb it.

■■■ In this case the jury found for the defendant. Whether we agree with the verdict or not, we are holding it is supported by the evidence, i.e., not contrary to the evidence. We must presume that the instructions on negligence, and contributory negligence, were correct, and all the instructions given and not excepted were correct.

Most of the instructions given by the court are not set out in the abstract. The instructions set out in the abstract lay down the proper rule of law. Complaint of instructions cannot be considered for we do not have all the instructions before us.

Kreuger v. Sylvester, 100 Iowa 647, at page 651, 69 N. W. 1059, 1060, says:

"Defendant complains of some of the instructions given by the court. We cannot consider this complaint, for the reason that we do not have all the instructions before us."

In McDowell v. Interstate Oil Co., 212 Iowa 1314, at page 1320, 237 N. W. 456, 459, the court says:

"An objection is also interposed by appellant because the district court wrongfully instructed the jury. Several of the instructions are criticized. For some reason, appellant only set out a portion of the instructions. * * * Those paragraphs which are set forth in the record are correct as abstract propositions. Therefore, we cannot consider the assignment further here."

So we think there was a fair trial, the case was fairly submitted to the jury, and the jury having found a verdict, and the court having sustained the jury in so doing, and having entered judgment, the only thing we can do is to abide by the verdict. We have examined all the authorities cited by the plaintiff and defendants, have carefully considered the propositions made, and do not see how we can disturb the result arrived at. The decision of the lower court, therefore, is affirmed.—Affirmed.

HAMILTON, C. J., and ANDERSON, SAGER, DONEGAN, RICHARDS, MITCHELL, and KINTZINGER, JJ., concur.