MATHILDE ANDERSEN, Appellee, v. C. L. CHRISTENSEN, Appellant.

No. 43384.

JULY 31, 1936.

Chas. S. White and Graham & Graham, for appellee.

Leonard L. Ryan, Hal W. Byers, and McMartin, Herrick & Langdon, for appellant.

PARSONS, C. J.—This case arises out of an accident involving two automobiles being driven on highway No. 7 between Hamlin and Kimballton, in Audubon county, Iowa. One of the automobiles, a Chevrolet sedan, was driven by Mrs. Dagmar Andreasen, and the other car was an Auburn car driven and owned by C. L. Christensen, the defendant. In the Andreasen

car beside the driver, Mrs. Andreasen, were three persons: Mrs. Jessen sitting in the front seat beside the driver; Mrs. Andersen, the plaintiff, in the rear seat behind the driver, and Mrs. Reuss beside plaintiff, in the rear seat. The party left Audubon about 1:30 p. m. to attend a meeting of the Old Peoples Home at Elkhorn. The Christensen car left Audubon for the same place as the Andreasen car, between 1:30 and two o'clock, and caught up with the Andreasen car about two miles west of Hamlin, and, as testified by Christensen, followed along, driving about 30 to 35 miles an hour while so doing. At times the Christensen car was right up close to the Andreasen car, and at other times he would allow her to get ahead. The cars came out of a curve onto a piece of straight road about a quarter of a mile long, the road running southwest at this place. At the end of the straight portion of the road it makes a curve to the southwest. Christensen intended to pass Mrs. Andreasen on the straight track, and ran up close to her and honked his horn; he thought she would give the road, because she was over the black line at the time. He sounded his horn again, expecting her to give the road, and crept up on her, then she crowded over and he turned out, his left wheels off the pavement, and stepped on the gas to get away from her. He says she seemed to come straight across the road, and he stepped on the gas to get away from her, and shot ahead. After he had gone ahead a few rods Mrs. Johnson (in his car) looked back and said, "They upset." Christensen stopped his car as quickly as he could and looked back, and of course saw they had upset.

It appears from the official highway plat of Iowa, that Hamlin and Kimballton are about ten miles apart, and that there is a curve in the road about three or four miles east of Kimballton, and that Elkhorn appears to be about three or four miles south and a little east of Kimballton. So that at this time the two cars were within less than ten miles of their destination.

An enlarged plat of the road has been introduced in the case, marked Exhibit "1", and the testimony shows that after the accident happened, the broken glass from the Andreasen car was found on the right-hand side of the road, indicating the point at which the contact of the two cars took place, and where the accident happened. At this point the pavement is on a curve toward the west. This enlarged plat shows the highway on each side of the scene of the accident for several hundred feet. The

curve testified to is shown as a six degree curve, and the north end of the plat shows a straight track for some distance, and then the beginning of the curve as it lays on the ground down to and beyond the place of the accident. The straight road comes from the north, then commences the curve at about fifty feet beyond Station 334, the curve continuing as a six degree curve down to beyond Station 328. The evidence conclusively shows that, taking the defendant's version as to the two cars and their relative positions, and the place of the scene of the accident as marked on the plat, about Station 330, as indicated by the broken glass from the Andreasen car, the distance that defendant ran alongside of the other car on the curve and after leaving the straight track, was at least 375 feet. The defendant's car of course would be on the left-hand side, and the Andreasen car on the right-hand side of the pavement. The defendant in his testimony said, "Before I passed her I honked several times, thinking she would pull over." The question arises,—Why, if this is true, did he not slow down? It was no life and death matter to get to Elkhorn at any particular time, where both cars were bound. It was at the best not over fifteen minutes time to run there at the rate of speed the parties were going. So the defendant could not have saved more than five minutes time in any event by passing. It seems often in examining these cases, when one gets behind the wheel of one of these modern Juggernauts, he has a mania to get somewhere first. Hence the death total, and the numerous maimed people are with us because of the automobile. A reasonably prudent and cautious man would not rush ahead under such circumstances to gain so little. Had the defendant been the injured party a verdict probably would have been directed against him for contributory negligence based on his own evidence.

■■■ It must be borne in mind that the plaintiff here was not driving the Andreasen car; she was a guest therein. The negligence, if any, of the driver, is not imputed to her under these circumstances. The accident would not have happened but for the defendant undertaking to pass where and when he did as shown in the record of this case. To even concede negligence of the driver of the Andreasen car, at best the evidence would simply show that the two acts, i. e., the defendant undertaking to pass as he did, and the negligence of the driver of the Andreasen car, were concurring acts of negligence, and if this be true,

180 

then the defendant herein would be liable, notwithstanding his act was not alone the sole cause of the accident, for when two parties by their concurrent negligence injure a third party not guilty of negligence, both or either of the two are liable. Gould v. Schermer, 101 Iowa 582, 70 N. W. 697; Walrod v. Webster County, 110 Iowa 349, 81 N. W. 598, 47 L. R. A. 480; Harvey v. Clarinda, 111 Iowa 528, 82 N. W. 994; and in 24 other cases in this state, one as late as Wolfson v. Jewett Lumber Co., 210 Iowa 244, 227 N. W. 608, 230 N. W. 336.

Defendant in his evidence says: ''At the time, I passed the car Mrs. Andreasen was driving. I certainly didn't know at the time there was an accident. I just felt a little bit of a contact on the steering gear. * * * after the accident I examined my car and found a dent in the center of the running board. It was just like in paper, crumpled in like that, you know. That was the only mark on my car.'' Some of the women in the car called his attention to the fact that the Andreasen car had turned over, and they went back.

So the defendant was attempting to pass the Andreasen car while it was on the right-hand side of the pavement, going around a six-degree curve, and under the record, probably traveling thirty to thirty-five miles an hour.

It certainly is common knowledge that where an automobile or any other vehicle is traveling in this manner, and at this rate of speed, there must be a degree of care to resist what might be denominated as ''centrifugal force'', that force which tends to require constant effort of the driver to keep from running in a straight line, and to keep the car to the right side of the paving. So taking the testimony in the record as a whole, there was and must have been some sort of collision between the two cars. The defendant's car was traveling at the greater rate of speed. If the defendant's car struck the Andreasen car it would certainly tend to overcome the effort the driver of that car would have to make to keep on the right hand side of the pavement, and a very slight degree of force, with as heavy a body as an automobile, would tend to deflect it to the right, under such circumstances. Also, it would be true, that if it was the Andreasen car which struck the other car, moving at a greater rate of speed, it even would tend to deflect to the right, and we see from the location of the broken glass shown on the plat as the place where the Andreasen car overturned, that it was thrown to the right. So,

under the record here, it seems to us that there was a question for the jury as to whether or not the defendant herein was in the exercise of due care in passing the other car, and if he was not in the exercise of due care in undertaking to pass a car he had seen "wobbling back and forth on the pavement", driving at that rate of speed at the point he undertook to pass it, it would be negligence. It may be urged he thought he could pass it where there was no curve in the pavement. But he didn't. He traveled some distance afterward trying to get around the Andreasen car. He could have stopped or slowed down. Of course, he might have been five or ten minutes late getting to a place where it didn't make any difference when he arrived. Therefore, we think if this were the sole question in the case the court would be right in submitting the case to the jury.

Further, there was testimony in the record, put in by the defendant, that while the Christensen car was passing the Andreasen car it looked as if the Andreasen car was running right into the Christensen car. There was other testimony as to tracks of the automobile, burnt rubber marks, extending from twenty to thirty feet from the wreck, at about a 45 degree angle right off the pavement, and while the defendant claimed that the other car was "weaving back and forth across the road", it is denied by Mrs. Andreasen, Mrs. Jessen and by Mrs. Reuss.

At the conclusion of plaintiff's testimony, and again after the close of all the testimony, motion for a directed verdict was made, and overruled, we think properly. For under this record there was certainly something for the jury to say, from the evidence before it, as to whether or not the defendant was negligent in attempting to pass the other car, and as to whether or not, when he got slightly ahead of the other car he turned to the right so as to be hit about the center of his car by the Andreasen car. The statute requires that one undertaking to pass another car must not return to the road until thirty feet ahead of the car passed. The jury might have found he had not passed that distance when he undertook to make the turn. Therefore, the court was justified in overruling the motions for directed verdict, and in this there was no error. The jury found a verdict for the plaintiff. We think the amount found was not unreasonable in view of the injuries received by the plaintiff.

The defendant claims a great many errors in the instructions, and also error in overruling the motions for directed ver-

dict, and error in the refusal of instructions. Some of the instructions asked by the defendant might, perhaps, have been given, but an examination of the questions in the case shows that the case was generally fairly submitted to the jury; that on the whole the instructions were fairly submitted with the case. In ruling on the motion for directed verdict the court said, in speaking of the allegations of negligence, "In passing the car in which plaintiff was a passenger, did the defendant pull over on the right-hand side of the said highway before he was thirty feet ahead of the car he passed, to wit, the car in which plaintiff was a passenger?" And the court said as to this: "I will submit it on this last allegation of negligence", and that is the allegation of negligence upon which it was submitted.

Section 5022 of the code says that the vehicle approaching from the rear shall pass to the left, and shall not return to such road or path within less than thirty feet of the team or vehicle which has been passed. This is plain language. Why is the distance put at thirty feet? To make it so that one may be certain, taking into account all circumstances, that there will be no collision by pulling in front of the car just passed. Ordinarily on a country highway, for one to be on the wrong side of the road is only prima facie negligence. But this statute is a recent statute. It contains a positive direction, and whenever an automobile passes another and turns in at less than thirty feet ahead of a vehicle just passed, and an accident results therefrom, it is negligence not prima facie, but actually. The legislature must have meant something when it enacted this statute. It is our duty to construe it as enacted, and besides that, it meets the view of the court as being a wholesome rule to govern traffic on the highways.

Complaint is made by the defendant that the court committed error in Instructions 15 and 16, instructions on damages, in failing to limit the amount recoverable by plaintiff, and to the amount established by the evidence, and amongst the other cases cited to support the contention of the defendant herein, is Shelldorf v. Cherry, 220 Iowa 1101, 264 N. W. 54; Sergeant v. Challis, 213 Iowa 57, 238 N. W. 442.

▌▐▌ The instructions given are open to the objections made, in this: that they fail utterly to limit the damages to the amount pleaded in the petition and to the amount sustained by the evidence. A previous instruction stating the issues says that as the

result of such injuries the plaintiff suffered great pain and incurred medical and hospital bills amounting to $650, of which amount $223.60 was for hospital bills, and that the total damages was the sum of Five Thousand ($5000.00) Dollars. This is repeated in Instruction 15.

Instruction 16 is as follows:

"The damages, if any, to be awarded to the plaintiff should be such as will fully and fairly compensate her for the damages and injuries which she has sustained. There is no exact rule of law whereby damages for physical and mental pain and suffering, or for permanent injuries can be accurately measured, and in fixing the amount of such damages, if any, much is necessarily left to the sound and sober judgment and discretion of the jury. In any allowance to be made by you, the same must be reasonable. In awarding such damages, if any, and in fixing the amount thereof, you should consider all of the evidence introduced and throwing light thereon, and you should consider the whole matter with a cool, calm and deliberate judgment, free from passion or prejudice, and should endeavor to arrive at such fair sum as will compenate the plaintiff for her injuries.

"Plaintiff's recovery in the aggregate cannot exceed the sum of $5,000, with interest, being the amount asked for by her in pleading."

This instruction in no way limits the amount recoverable for the various items to the amount pleaded in the petition or to the amount fixed by the evidence.

In Sergeant v. Challis, 213 Iowa 57, 238 N. W. 442, the court instructed the jury as follows:

"If your finding is for the plaintiff, then you are instructed that you are to allow the plaintiff damages for such loss and injuries, and for such loss and injuries only, as you find from the evidence necessarily resulted from the collision complained of. In no event, however, will you allow the plaintiff a sum in excess of $6,656.00."

This court said about that instruction:

"This instruction cannot be upheld. The plaintiff in his petition alleged a specific amount of damage for loss of time, a specific amount for nursing and caring for him, and a specific

amount for permanent impairment or injury, and asked judgment for all of the same in the sum of $6,656.00. The court, in the aforesaid instruction, does not tell the jury what elements may be considered by them in fixing the amount of plaintiff's recovery, nor fix the limit of recovery for the different elements mentioned in the petition to that alleged in the petition, nor as shown by the evidence relative thereto. Nor is there any standard given for the measure of plaintiff's recovery in the event that the jury should find that the plaintiff's injuries are permanent, and that he will suffer damage in the future. The instruction gives no rule to the jury upon this all important question, but left them to wander into the domain of speculation and conjecture. Appellant's complaint as to this instruction must be upheld.''

And as supporting the proposition that it was error for the court to instruct as it did, the following cases are authority: Smith v. Standard Oil Co., 218 Iowa 709, 255 N. W. 674; Balik v. Flacker, 212 Iowa 1381, 238 N. W. 467; Desmond v. Smith, 219 Iowa 83, 257 N. W. 543; Schelldorf v. Cherry, 220 Iowa 1101, 264 N. W. 54.

Therefore, as these matters are decisive of the case, and as other matters which have been argued, perhaps would not occur on a retrial of the case, for the reasons pointed out the decision of the lower court is hereby reversed.—Reversed.

DONEGAN, MITCHELL, STIGER, and KINTZINGER, JJ., concur.