John G. Hinrichs, Appellee, v. Wendlin Mengel, Appellant.
No. 45195.

August 6, 1940.

J. C. Hall and Bollinger & Donegan, for appellee.

Martin F. McCarthy, Jr., and Lane & Waterman, for appellant.

STIGER, J.—Plaintiff's and defendant's automobiles collided at the intersection of Marquette street and Eighth street in Davenport about 3 o'clock on the afternoon of September 3, 1935. Marquette street is a heavily traveled north and south thoroughfare 40 feet wide which runs straight north from the intersection 298 feet and then turns to the northwest. Eighth street is 24 feet wide east of the intersection and 30 feet wide west of the intersection.

Plaintiff owns a grocery store located on the east side of Marquette street. Plaintiff's car was parked in front of the building about 23 feet south of the south curb of Eighth street a few moments before the accident. Plaintiff entered his car intending to drive to his home west of the intersection on Eighth street. When he reached the west side of the intersection his car was struck by defendant's car which approached the intersection from the north.

I. Defendant's first assignment of error is that the court erred in overruling his motion for a directed verdict, the grounds of which are (1) plaintiff was guilty of contributory negligence as a matter of law, and (2) plaintiff failed to prove that defendant was guilty of any negligence which constituted a proximate cause of the accident. We will first consider the first ground of the motion.

Defendant claims plaintiff was guilty of contributory negligence as a matter of law in: (a) Failing to maintain a proper lookout. (b) Failing to first ascertain that he had sufficient space within which to turn left in safety before attempting the turn. (c) Failing to have his automobile under control. (d) Failing to yield the right of way to the defendant.

Section 5032, 1935 Code, provides that an operator of a motor vehicle shall, before turning or changing its course, first see that there is sufficient space to make such movement in

safety. The evidence most favorable to plaintiff is substantially as follows:

After looking north and south on Marquette street and east and west on Eighth street and observing no vehicles, plaintiff drove north on the east side of Marquette street in low gear until he reached the north one half of the intersection where he had an unobstructed view north on Marquette street for about 318 feet. Before turning west in the north side of the intersection, plaintiff looked north and observed no car approaching. He then turned to the left and traveled west on the north side of Eighth street in low gear at a speed of 5 to 7 miles per hour. When his front wheels reached the yellow lines west of the intersection marking the continuation of the west Marquette street sidewalk south across Eighth street and the rear of his car was in the intersection, defendant's car struck the rear wheel of plaintiff's car. The collision threw the gears of plaintiff's car into reverse and caused it to make two complete revolutions in the west side of the intersection and east part of Eighth street west of the intersection. It then went south stopping on the west side of Marquette street 45 feet south of the intersection. Plaintiff was found unconscious on the sidewalk on the southwest corner of the intersection.

Defendant admitted he told plaintiff at the hospital that, "I don't remember seeing you until you were right in front of me." Defendant stated to a witness for plaintiff that he did not see anyone until he was right on top of Mr. Hinrichs.

The witnesses are not in agreement as to the exact place plaintiff began to make his turn to the west in the intersection. Assuming he started the turn in the southeast corner of the intersection, he could have traveled approximately 50 feet before he was struck. As stated, when plaintiff reached the intersection, he had a clear view north on Marquette street for a distance of 318 feet. The most favorable evidence as to speed is that plaintiff was driving 5 miles per hour.

While plaintiff was driving 50 feet at 5 miles per hour defendant could have traveled 318 feet, about 6½ times the distance plaintiff was traveling, if he drove at a speed of about

33 miles per hour; that is, the jury could have found that defendant, though beyond the vision of plaintiff when he commenced to turn, could have reached the intersection and collided with plaintiff's car by driving the 318 feet at less than 35 miles per hour. If plaintiff commenced his turn further north in the intersection, he would have traveled a little less than 50 feet and defendant would have driven more than 33 miles per hour.

Defendant's contention is that he, under the record, must have been within view of plaintiff when the latter claimed he looked to the north, and that plaintiff either did not look or failed to see defendant's car, which must have been in plain sight. The record does not support this proposition. There is a sharp conflict in the evidence as to the location of defendant's car just before plaintiff changed his course. As stated, plaintiff's evidence shows that defendant's car was not in view just before he started to turn and that defendant could have reached the place of collision by driving about 35 miles per hour. Defendant claims he was 40 feet north of the intersection when plaintiff's car was parked in front of his store. It was for the jury to determine whether, under the facts, plaintiff, acting as a reasonably cautious and prudent person, had the right to believe there was sufficient space to turn and cross the intersection in safety.

Defendant's story of the accident is that when he was 40 feet north of the intersection, traveling 20 miles per hour, he saw plaintiff's car parked in front of his store 23 feet south of the intersection; that he continued south and, ''as I hit the intersection proper I looked up and saw plaintiff's car right in front of me about 17 feet away,'' defendant's conception of the truth of the matter being that plaintiff started his car, drove 23 feet to the intersection, and then across the intersection in front of defendant's car while defendant was driving 40 feet at 20 miles per hour. The jury apparently rejected this story.

The trial court was right in submitting the question of contributory negligence to the jury.

■ II. The court submitted to the jury three grounds of negligence which are as follows: 1. That appellant was driving at an excessive rate of speed. 2. That he did not have his car under control when approaching an intersection. 3. That he saw, or could have seen, plaintiff's car, and failed to so operate his own car as to avoid a collision.

Defendant contends he was not guilty of any negligence that contributed in any degree to plaintiff's injuries. There is no merit to this contention.

Section 5031, 1935 Code, requires the operator of a motor vehicle to have it under control when approaching and traversing an intersection.

Section 5029, 1935 Code, the speed standard section, requires a motor vehicle to be driven at a "careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, * * * ".

The jury could have found that while plaintiff was turning west and crossing the intersection he was in full view of defendant for a distance of over 300 feet and that defendant, traveling over 30 miles an hour, drove into the rear of his car in the northwest part of the intersection, the front end of plaintiff's car being beyond and west of the intersection. Defendant admits he was driving 20 miles per hour when he entered the intersection and plaintiff was then in front of him.

Whether a particular speed is excessive depends on the circumstances. There was no error in submitting said grounds of negligence to the jury.

■ III. In stating his items of damage, plaintiff alleged in his petition that his automobile was damaged in the sum of $42, that he incurred hospital bills in the sum of $80.60, and doctor bills in the sum of $75. He then stated he "lost twelve whole weeks time from his business at a great expense to him. Also five weeks partial loss of time. By reason of the foregoing he has sustained actual damages in the sum of $7,500." There was no motion for a more specific statement as to damages for

loss of time. The only loss to plaintiff because of absence from his business was, as shown by the evidence, the payment of $9.00 per week to a clerk for about 20 weeks.

Instruction No. 17 is in part as follows:

"If upon a full and fair consideration of the evidence and of these instructions, you decide that the plaintiff has made out a case entitling him to recover damages against the defendant, you should allow him, such a sum as will fairly and fully compensate him: * * *

"4th. For the reasonable expense, if any, necessarily incurred for the conduct of his business, as a direct result of said injury or injuries; and,

"5th. For the pain and suffering, if any, to which he has been subjected, as a direct result of the injury or injuries received by him as charged, and as shown by the evidence. The allowance for the last two items, viz.: Nos. 4 and 5 cannot exceed the sum of $7,312.40."

Defendant's objection to the instruction is that it fails to limit a recovery for expenses incurred for the conduct of plaintiff's business to the period of his absence therefrom alleged in the petition and to the amount of damages for loss of time shown by the evidence, and that such failure constituted reversible error. The only limitation on the amount of damages for the conduct of plaintiff's business is found in paragraph 5 of the instruction. The objection must be sustained.

This court has repeatedly held that an instruction on various items of claimed damages must limit the jury, in its return of damages, to an amount shown by the evidence but not exceeding the amount specifically asked for in the petition. Andersen v. Christensen, 222 Iowa 177, 268 N. W. 527; Smith v. Standard Oil Company, 218 Iowa 709, 255 N. W. 674.

Because of reversible error in giving instruction No. 17, it is unnecessary for us to consider other objections to the court's instructions.—Reversed.

HALE, MILLER, SAGER, BLISS, and HAMILTON, JJ., concur.