Don Young, appellee, v. Blue Line Storage Company, appellant.

No. 47684.

(Reported in 44 N.W.2d 391)

126

OCTOBER 17, 1950.

REHEARING DENIED JANUARY 12, 1951.

John D. Randall, of Cedar Rapids, and France & France, of Tipton, for appellant.

Donnelly, Lynch, Lynch & Dallas, of Cedar Rapids, and Messer, Hamilton, Cahill & Bartley, of Iowa City, for appellee.

HALE, J.—In substance, the facts are as follows: The collision referred to was between a motor crane or dragline operated by plaintiff, Don Young, and a truck and semitrailer owned by the defendant, Blue Line Storage Company, and driven by its employee, Harry F. Lyons. The collision occurred when defendant's driver undertook to pass plaintiff on the left as they approached an intersection. Plaintiff, who was driving the dragline, sustained injuries. The jury returned a verdict for plaintiff in the sum of $15,000. Defendant's motions to direct, for judgment notwithstanding the verdict, and for new trial were overruled. Both vehicles were proceeding west on U. S. Highway No. 30 about four miles west of Mechanicsville, Iowa. The point of collision was near or on the intersecting road and the accident took place while defendant's vehicle was passing plaintiff on the left.

U. S. Highway No. 30 is a paved road running east and west. The intersection referred to is formed by a north-and-south county road made of rock and is one of the main traveled roads in the western part of Cedar County. Highway No. 30 was generally level to the east of the intersection for a considerable distance. There are no cornfields east of the intersecting road and the fields there were planted in beans. At a point approximately 1250 feet east of the intersection there was a sharp break in the grade, the highway sloping down to the east at that point into a hollow which continued to a point almost seven tenths of a mile east of the intersection where the grade was again elevated near the railway track at a point referred to as Hudacheck's corner.

Looking back from a point 250 feet east of the intersection at a height where the plaintiff was sitting, the decline of the grade was such that he would not be able to see a semitrailer of the height of the one driven by the defendant which would be farther east of the intersection than the driveway into Tom Cole's house which was approximately 1250 feet east of the intersection. West of Tom Cole's driveway were a gas station and an eating house at a cabin camp known as "Uncle Tom's Cabins"—the eating house being approximately 800 feet east of the intersection. The plaintiff in his testimony claimed the collision occurred in the approximate center of highway No. 30

and directly north of the corner post at the southwest corner of the intersection.

On the morning of July 23, 1948, the plaintiff was driving the dragline on highway No. 30, intending to turn to the left into the intersection of the county road. According to his testimony, when he approached the top of the grade he estimated his speed at about twelve to fifteen miles per hour, and about fifteen miles per hour when he reached the top of the grade. He testified that as he proceeded west to the intersection he made observation to the rear to see what vehicles were following him; that the first observation after he was over the top of the grade was possibly Tom Cole's lunch stand, or a little farther west, at which point a colored semitrailer passed him, identified later as a LaBelle van, which was one of three that were traveling near each other on the road and was the first car of the convoy—the second of the three being defendant's vehicle, and the third one was still farther back.

Testimony was offered that after this first vehicle passed plaintiff he made his next observation to the east when he was approximately 400 feet east of the intersection. Plaintiff testified that when this observation was made he saw no vehicle proceeding behind him. From that point the vehicle in the hollow was not visible. He testified that as he proceeded west toward the intersection he looked again at a point approximately 250 feet east of the intersection—at that time just seeing the top of what appeared to be a semitrailer coming up over the rise on highway No. 30 behind him. His testimony is that at that time and at the driveway of Tom Cole's house, approximately 1250 feet east of the intersection, and from there as he proceeded west, he made another observation to the rear when he was seventy-five or eighty feet east of the intersection—seventy-five feet east of the east line of the traveled north-and-south road, and that he again saw this semitrailer approaching from the east in the neighborhood of 300 to 400 feet behind him. He further testified that as he proceeded from the point 250 feet from the intersection to a point seventy-five feet east of the intersection he reduced the speed of his vehicle, the dragline, estimating that he was going eight to twelve miles per hour.

According to his story, at a point approximately 250 feet east of the intersection he began signaling to indicate his intention to make a left turn with the dragline. Plaintiff gave this signal by extending his left arm horizontally, and kept his left arm so extended until he reached to get the wheel to make the turn to the left. He kept his arm out continuously until he was ready to make the turn and did not take his arm in until he was fifteen to twenty feet east of the intersection. He testified that when he looked in the rearview mirror at seventy-five feet back from the intersection the truck was at least 300 to 400 feet behind him; that he had plenty of time to make the turn, and that no horn was sounded; he also made observation to ascertain whether any vehicles were approaching from the west and there were none, and the highway was clear at the time; that the vehicle he was driving was at all times on the right-hand side of the black line; that it was his intention to turn and that was the last of his recollection; that he did not believe he could have turned very much across the black line. He further testified that at the time of the collision, to the best of his knowledge, the front end of the machine was headed slightly to the southwest, the left rear wheel was on the right-hand side of the pavement, but as to the location of the right front wheel he did not know except that his intention was to turn and he was in the act of turning.

A witness who was following defendant's van stated:

"The Lyons van and dragline collided about 60 feet east of the intersection. Then the van went over to his left just across the intersection, on across the intersection. He went off to his left and turned over. The dragline went off into the cornfield. As soon as they struck about 60 feet east of the intersection, the Lyons vehicle went off to his left and across the intersection and turned over. The collision occurred about the center line."

After the collision plaintiff's cigarettes and watch fob were found almost in the center of the intersection in the middle of the highway. This is, in substance, plaintiff's story related on the witness stand. There was, of course, testimony to the contrary, especially as to his giving the signal by extending his

hand, which was denied by several witnesses. The jury, however, had this evidence before it and evidently believed it.

Much evidence was received regarding the condition of the two vehicles after the impact, and defendant refers to this evidence as showing the contradiction made by the physical facts to the testimony offered for the plaintiff. It is unnecessary to review these descriptions offered as to the cars and the situation immediately following the collision, but it was all heard by the jury, and the jury, from all the evidence, reached the conclusion that the responsibility for the collision was in the defendant. In substance, they found that the driver of the defendant's trailer attempted to drive around the dragline too close to the intersection and the collision resulted. The jury had a right to believe such portion of the testimony as was properly admitted and to form their conclusions therefrom.

I. Defendant assigns error of the court in overruling defendant's motion for directed verdict at the close of plaintiff's testimony, the error of the court in overruling defendant's motion to direct a verdict at the close of all the evidence, and the ruling of the court overruling the motion of the defendant for judgment notwithstanding the verdict. In its argument it reviews all the testimony and it is unnecessary to follow completely its line of argument. In view of the fact and the rule that the evidence and such inferences as may reasonably be drawn therefrom must be viewed in the light most favorable to the plaintiff if there is evidence to sustain plaintiff's claim, it is not for this court to do other than sustain the findings of the jury when properly based on competent evidence.

The provisions of the statute, section 321.314, Codes 1946 and 1950, are that:

"No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by such movement or after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement."

Section 321.318, Codes 1946 and 1950, provides that the signal for a left turn is by "hand and arm extended horizontally."

The jury must have found under the evidence submitted that, after making the appropriate signal for a left turn and making observations that he believed and as a reasonably prudent person had a right to believe the turn could be made with reasonable safety, he had a right to rely upon the assumption that the driver of defendant's vehicle would comply with the law and not attempt to pass within 100 feet of the intersection, as provided by law in section 321.304, Codes 1946 and 1950.

The dispute arises over the question of whether the plaintiff was guilty of contributory negligence as a matter of law. However, a good deal of defendant's argument is based upon the quantity of the evidence. It was for the jury to determine whether plaintiff sustained the burden of proof in the matter of giving signals. The credibility of the witnesses is for the jury.

There is a dispute as to the point where the collision occurred. Lyons, the driver of the defendant's vehicle, claimed that it occurred 150 feet east of the intersection; that the two vehicles locked together at that point, but the chipped paint, glass, and debris were found at a point where the plaintiff claimed the collision occurred. There was evidence to the contrary, and plaintiff's cigarettes and watch fob were found in the center of the intersection.

There is also taken up the question of whether plaintiff had sufficient space to make the turn. It is apparent that while the statute requires that the plaintiff in turning shall not make such movement unless or until it can be made with reasonable safety, yet this does not insure or guarantee the fact that it will be made with reasonable safety. The mere fact that a collision occurs does not necessarily mean that the plaintiff violated the law. The rule to be applied in determining whether plaintiff had sufficient space, and as bearing on this point, is stated in Harmon v. Gilligan, 221 Iowa 605, 608, 266 N.W. 288, 290:

"Under this phrase of the statute, a duty is put upon the plaintiff, and, as the driver of her car, to comply with this provision of the statute she must be reasonably certain that she can make such turn in safety; and, if she acted as a reasonably

prudent person in believing that she could make this turn, she has complied with this provision of the statute."

See also Miller v. Lowe, 220 Iowa 105, 261 N.W. 822.

Under the evidence in the present case this was a question for the jury.

We have examined the testimony in regard to physical facts and the other matters brought up under the claims made by defendant and are satisfied that the court was right in its ruling on various motions. The question of plaintiff's freedom from contributory negligence was properly submitted to the jury.

II. Defendant's argument refers to the alleged error of the court in admitting in evidence plaintiff's Exhibit No. 23 which was a photograph of the Cedar County dragline but which photograph showed an arm extending horizontally from the dragline, where one of the conflicting questions for the determination of the jury was whether or not the plaintiff had given a signal by extending his arm. It is the claim of the defendant that this error was not cured by the sustaining of the motion to strike at the close of all the evidence, especially in view of the cross-examination where it is shown that the witness could not have laid the foundation for the introduction of the pictures if the court had required a foundation to be laid. It is certainly not contended nor did the jury expect this photograph to represent the view at or near the time of the collision. It must have been evident to the jury that no photograph could be taken until some time after the collision occurred. The fact that there was a person sitting in the seat with an arm extended could have had no significance nor could reasonable persons expect that it was an actual view of the situation at the time of the collision. The only reason for the submission of the exhibit was to give the jury an idea of the nature of the vehicle. If any error was committed it was the withdrawal by the court of the exhibit. It was proper to introduce a picture of the dragline and we see no necessity to lay the foundation for the introduction. We see no abuse of the court's discretion in admitting the photograph. See Ingebretsen v. Minneapolis & St. L. R. Co., 176 Iowa 74, 155 N.W. 327.

III. Defendant's argument refers to alleged errors in the giving of instructions on the grounds that it is erroneous to

give an instruction that unduly emphasizes issues, theories or defenses, whether by repetition or by singling them out and making them unduly prominent. We have read the instructions in considering the complaint made. We do not find they are subject to the charge made by the defendant. Naturally, many of the instructions refer to the same subject and there accordingly must be a frequent reference to the same subject matter. This complaint by the defendant refers to instructions Nos. 5, 9, 12, 15 and 16. The objection does not claim that the law is incorrectly stated, but largely as to the frequency of reference and the alleged undue emphasis given to the negligence on the part of the driver of defendant's truck. We are not satisfied that there was more frequent reference to these matters than was required by the questions discussed. See Snakenberg v. Minneapolis & St. L. R. Co., 194 Iowa 215, 222, 188 N.W. 935.

Defendant also argues that the negligence of the defendant driver in passing within 100 feet of the intersection or having the collision happen within 100 feet of the intersection was not absolute, and the jury should not have considered it with the surrounding facts and circumstances. The pertinent parts of the statute referred to in section 321.304, Codes 1946 and 1950, read:

"No vehicle shall, in overtaking and passing another vehicle or at any other time, be driven to the left side of the roadway under the following conditions:
"* * *
"2. * * * when approaching within one hundred feet of or traversing any intersection * * *."

The theory of the defendant as shown in its argument is that when approaching "within 100 feet" it can only mean within the distance of 100 feet the driver should not start to pass, and that it does not mean that if a collision happens within 100 feet of the intersection the individual who is passing is guilty of negligence. We disagree with the defendant in this respect. The statute itself indicates the contrary. It says, "when approaching within 100 feet" of an intersection. Therefore, no matter when defendant's truck was started to be driven, if, when within 100 feet of the intersection it remained on the left side of the highway it was traversing, it violated this statute. The driver

of a following car could very well pass to the left side of the road, but if he continued in that position until within 100 feet of that intersection he would violate the rule. The court in the instruction upon this phase of the evidence so instructed and was correct. Such has been the holding in other jurisdictions and in certain cases cited by the plaintiff. See Holland v. Edelblute, 179 Va. 685, 20 S.E.2d 506; Greer v. Marriott, 27 Ala. App. 108, 110, 167 So. 597, 598, in which, in interpreting an act similar to our own, the court says:

"We hold that the passing of one car by another going in the same direction is one continuing act, from the time the rear car pulls out of the direct lane of travel in the rear of the car to be passed, up to and including the completion of the passing and the passing car is again in its proper lane."

American Products Co. v. Villwock, 7 Wash. 2d 246, 271, 109 P.2d 570, 581, 132 A. L. R. 1010, 1027, in discussing a statute similar to ours, but applied to curves, the court instructed that it should be unlawful to overtake and pass another vehicle proceeding in the same direction upon any curve when the view of the operator of such overtaking vehicle is obstructed or obscured within a distance of 800 feet, and says, in part:

"While the literal language of the statute lends support to appellant's contention, the impracticable, and almost absurd, results that would flow from the construction contended for, indicate clearly that the statute was intended, and should be interpreted, to prohibit the overtaking and passing of other vehicles proceeding in the same direction, not only while actually upon a curve, but also while approaching any curve, when the view of the operator of the overtaking vehicle is obstructed within a distance of 800 feet."

And the same rule may apply to our statute. We are satisfied that the court correctly instructed upon this subject.

It is unnecessary to discuss other alleged incorrect instructions. We have examined them with care, especially those relating to emergency and defendant's counterclaim, and find no error in them.

IV. Defendant in its argument and also in its reply argument alleges that the court committed error in submitting as damages the loss of earnings on the part of the plaintiff not to exceed the sum of $15 per day for such time lost, and argues that an instruction on damages must limit the jury to an amount shown by the evidence, but not exceeding the amount specifically asked for in the petition. It assails the giving of instruction No. 24 which is, so far as applicable, as follows:

"If you find for the plaintiff under the evidence, guided by these instructions, you will allow him such damages as will fairly and reasonably compensate him for the injuries, if any, which you find from a preponderance of the evidence he has sustained as the proximate result of the collision. In determining the amount you will allow him:

"(b) Such loss of earnings, if any, as you find the plaintiff has sustained on account of said injuries, but not to exceed the sum of $15 per day for such time lost.

"(c) Such an amount as will reasonably compensate plaintiff for the pain and suffering and mental anguish as you may find he has suffered to the date of trial as a result of his injuries received in the collision."

The instruction also refers to future suffering and medical expenses, and terminates with the paragraph: "But you will not allow any damages which are not the proximate result of the injuries caused by the negligence of the defendant, and in no event will you allow him a sum greater than that claimed in his amended petition, to-wit: the sum of $25,000."

It might be said that instruction No. 24 answers the argument of the defendant. The first paragraph directs that the finding must be for the plaintiff under the evidence guided by the instructions, and directs that the damages allowed, of course under the evidence, should be compensation for his injuries as found from a preponderance of the evidence. But division (b) is directly assailed by the defendant apparently on the ground that it did not contain the direction or limitation to the jury of the amount shown by the evidence. We think the limitation in the first paragraph sufficient. Besides that, it is a well-known rule that all the instructions are to be read together and the court

so instructed the jury in instruction No. 31 that they should take into consideration all the instructions as a whole in arriving at the verdict.

For instance, in instruction No. 12 the jury were told that if they found by a preponderance of the evidence negligence on the part of the defendant and freedom from contributory negligence on the part of the plaintiff, it would be their duty to return a verdict for the plaintiff in such an amount "as you find from the evidence plaintiff is entitled to recover."

In instruction No. 18 they were told what must be established by the plaintiff, that "you must show by a preponderance of the evidence the negligence in one of the particulars charged in the petition."

In instruction No. 22, among other things, the jury were instructed that the court "has also fixed the maximum amount which you may award the defendant * * * if you find it is entitled to recover"; that in mentioning the maximum amount it is not to be understood that the jury should return that amount or any amount. The instruction further states: "The amount asked by plaintiff does not determine in any degree the amount you should allow him, except that you cannot allow him anything in excess of it * * *."

In instruction No. 26 the jury were told that if they should find by a preponderance of the evidence his right to recover, "then you must fix the amount of the damages based on the evidence."

It would seem that the jury were sufficiently apprised that the allowance for any of the damages claimed must be based upon the evidence, and that the limitation, both of the general verdict and the amount specifically allowed for the loss of time and earnings, was a limitation only. The jury were warned repeatedly that this was not to guide them to a verdict but to specify an amount beyond which they could not go.

Defendant in its argument cites various cases. Careful examination of these cases discloses that they do not determine the point here raised. Hinrichs v. Mengel, 228 Iowa 1124, 293 N.W. 452, was reversed for a failure to limit a recovery for expenses for the conduct of plaintiff's business to the period of his absence therefrom alleged in the petition, and to the amount

of damages for loss of time shown by the evidence. There is such a limitation in the present case.

Andersen v. Christensen, 222 Iowa 177, 268 N.W. 527, is also cited in support of defendant's argument. The objection found by the supreme court to the instruction in this case was the failure to limit the jury to the amount pleaded in the petition and to the amount sustained by the evidence. Such is not the case here.

Desmond v. Smith, 219 Iowa 83, 257 N.W. 543, also quoted as authority, is reversed on account of the failure of the court to limit the jury to their return of damages.

In the case of Wosoba v. Kenyon, 215 Iowa 226, 243 N.W. 569, there was an inaccurate limitation, being in excess of the amount claimed, but on account of the recovery being less the smaller amount was held in error, but was not prejudicial, and the case was affirmed.

Plaintiff cites Danner v. Cooper, 215 Iowa 1354, 1365, 246 N.W. 223, 228. In division [6] of the opinion in that case the court told the jury that plaintiff's recovery in any event could not exceed $150 for loss of time from work, which was the amount claimed in the item in the petition. Although the uncontradicted evidence, according to the appellant in that case, showed plaintiff was earning $100 a month prior to the injury and was absent from work only five weeks, and therefore could not have lost $150 for loss of time, the court failed to limit the amount of recovery to that shown in the evidence. The court said:

"It is true that the evidence shows that the plaintiff lost five weeks time from work, and there is no evidence that he has lost any additional time, although not engaged in the same work as before his injury. It is also true that the evidence shows that, at the time of his injury, he was receiving as wages $100 a month."

While the court told the jury that the plaintiff could not recover for loss of time in an amount in excess of $100 per month for the length of time which the evidence shows he had lost, the appellants were in error in the assertion that the court failed to limit the amount of the recovery to that shown in the evidence.

In other instructions the court did so limit it, and the court states that this is a familiar rule that instructions must be considered as a connected whole.

See also Stanley v. Cedar Rapids & Marion City Ry. Co., 119 Iowa 526, 536, 93 N.W. 489, 493, where the question is discussed and the instruction was challenged because the words "from the evidence" or "as shown by the evidence" were omitted. The court states:

"Jurors may be assumed to have some sense, and it is not presuming too much, we think, to say that every man who is fit to sit upon a panel knows that he is to make his findings from the evidence. Instructions must always be based on evidence, and when the jury is told that, if they find certain things, such and such a result must follow, there is no reason for saying that such an instruction is misleading because the words 'from the evidence' or 'as shown by the evidence' are omitted."

We are satisfied also that from the evidence there could have been a finding that for some days the wages of the plaintiff might have been as high as $15. Just as on other days, and perhaps many of them, the amount of wages received by plaintiff could have been much less than that amount. We do not find the instructions have been erroneous.

After consideration of the whole case and the arguments of counsel we are fully satisfied that there was no reversible error at the trial, and that the judgment of the district court should be and is affirmed.—Affirmed.

All JUSTICES concur.