Dona Lee ROACH, Plaintiff-Appellant,

v.

Verna F. LACHO, Defendant-Respondent.

No. 51492.

Supreme Court of Missouri,

Division No. 2.

May 9, 1966.

W. Hugh McLaughlin, Rollie R. Baldwin, Kansas City, for appellant.

Richard P. Sprinkle, Kansas City, for respondent; Sprinkle, Carter, Sprinkle & Larson, Kansas City, of counsel.

FINCH, Judge.

Plaintiff brought suit for $20,000 for personal injuries. At the close of plaintiff's case the trial court sustained defendant's motion for a directed verdict and entered judgment for defendant. Plaintiff appeals.

Plaintiff's petition alleged primary and humanitarian negligence. Defendant's answer contained a general denial and pleaded contributory negligence, including an assertion that plaintiff was driving to the left side of the road when approaching within one hundred feet of an intersection. The trial court held that plaintiff's own evidence disclosed that she was guilty of contributory negligence as a matter of law, which barred recovery for primary negligence, and

that the evidence did not make a submissible case under the humanitarian doctrine. These are the two issues raised on appeal, and we shall consider them in that order.

The evidence discloses that on the morning of September 25, 1961, plaintiff was driving her automobile south on Raytown Road where it enters Raytown. The speed limit at that point was 35 miles per hour. The street is constructed of concrete and is 18 feet wide. Raytown Road is intersected at this point by 53rd Street, which runs east from a "T" intersection with Raytown Road. It is constructed of blacktop and is 17 feet wide. At the intersection with Raytown Road, 53rd Street bells or widens out to a width of 62 feet, but practically all of the additional width is on the south side of the street. Both the testimony and the photographs indicate that 53rd Street does not widen appreciably on its north edge but at that point forms an almost square intersection with Raytown Road.

Plaintiff testified that as she proceeded south on Raytown Road she followed a slow-moving Comet automobile traveling at approximately 15 miles per hour. She testified variously that when she was between 100 to 150 feet from the intersection with 53rd Street, she turned from the right lane to the left lane and started to pass the Comet. For the purposes of this appeal, we will assume that this occurred before she reached a point 100 feet from the intersection with 53rd Street. At the time plaintiff turned from the right-hand to the left-hand lane she could see four blocks to the south on Raytown Road. She accelerated to 30 miles an hour to pass the Comet, which was traveling at 15 miles per hour. When she was about three car lengths from the north edge of the 53rd Street intersection (48 to 51 feet), plaintiff observed defendant's car moving west on 53rd Street at about 10 miles per hour. She estimated it was about one car length from Raytown Road. At that time plaintiff's right rear door was about even with the front of the Comet automobile. Plaintiff applied her brakes and honked her horn, but her car

and defendant's car collided on the east half of Raytown Road at the intersection with 53rd Street. Other facts, as necessary, will be recited in connection with discussion of whether the evidence was sufficient to justify a submission to the jury under the humanitarian doctrine.

The question of whether plaintiff was guilty of contributory negligence as a matter of law involves a consideration of the provisions of § 304.016 and particularly paragraph 4 thereof (all references are to RS Mo 1959, V.A.M.S., unless otherwise indicated). Said paragraph 4 is as follows:

"4. No vehicle shall at any time be driven to the left side of the roadway under the following conditions:

"(1) When approaching the crest of a grade or upon a curve of the highway where the driver's view is obstructed within such distance as to create a hazard in the event another vehicle might approach from the opposite direction.

"(2) When the view is obstructed upon approaching within one hundred feet of any bridge, viaduct, tunnel or when approaching within one hundred feet of or at any intersection or railroad grade crossing." [1]

Plaintiff asserts that when the statute uses the language "No vehicle shall at any time be driven to the left side of the roadway," the use of the preposition *"to"* implies a change of the vehicle's location from the right to the left side of the roadway. Consequently, says plaintiff, the statutory prohibition relating to the area within one hundred feet of an intersection applies *only* if, within that distance, the vehicle actually crosses from right to left, and it has no application if the vehicle was *already* in the left lane when it reached a point one hundred feet from the intersection.

1. Since we refer in this opinion to various other parts of § 304.016, we set out here the entire section except paragraph 4, set out above.

"304.016. 1. The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to the limitations and exceptions hereinafter stated:

"(1) An operator or driver overtaking and desiring to pass a vehicle shall sound horn before starting to pass except in cities where prohibited by ordinance;

"(2) The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle;

"(3) Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle.

"2. The driver of a motor vehicle may overtake and pass to the right of another vehicle only under the following conditions:

"(1) When the vehicle overtaken is making or about to make a left turn.

"(2) Upon a city street with unob-structed pavement of sufficient width for two or more lines of vehicles in each direction.

"(3) Upon a one-way street.

"(4) Upon any highway outside of a city with unobstructed pavement of sufficient width and clearly marked for four or more lines of traffic.

"(5) The driver of a motor vehicle may overtake and pass another vehicle upon the right only under the foregoing conditions when such movement may be made in safety. In no event shall such movement be made by driving off the paved or main traveled portion of the roadway.

"(6) The provisions of this subsection shall not relieve the driver of a slow-moving vehicle from the duty to drive as closely as practicable to the right-hand edge of the roadway.

"3. Except when a roadway has been divided into three traffic lanes, no vehicle shall be driven to the left side of the center line of a highway or public road in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken."

We note that the statute does not say specifically that no vehicle shall be driven from the right-hand lane to the left-hand lane of the highway. Neither does it say explicitly that no vehicle shall be driven in or on the left-hand side of a roadway. What, then, does the language "to the left side of the roadway," as used in paragraph 4 of the statute, mean?

In the first place, it should be noted that paragraph 4 is not limited by its terms to vehicles overtaking and passing other vehicles. Paragraphs 1, 2 and 3 of § 304.016 do apply specifically to overtaking and passing, but this is not true of paragraph 4. It makes no reference anywhere to overtaking and passing other vehicles, but starts out by saying that "No vehicle shall *at any time* be driven * * *" (emphasis supplied). It then goes on to spell out several specific situations in which no vehicle is to be driven "to the left side of the roadway." The first such situation specified in the statute is as follows: "No vehicle shall at any time be driven to the left side of the roadway * * * when approaching the crest of a grade." Is this language intended to prohibit all vehicles from driving in the left-hand lane when approaching the crest of a grade, or does it mean, as plaintiff contends, that the prohibition applies *only* if the vehicle crosses over from right to left as it approaches the crest of the grade? We think it means the former, not the latter. A car which has been on the left side of the road for some time and remains there as it approaches the crest of the hill is just as much a hazard to traffic approaching from the opposite direction as a vehicle which crosses over into the left-hand lane when approaching the crest of the hill. We find nothing in the language of the statute, or in the evident purpose of the statute, which would cause us to construe it to be applicable only to those vehicles crossing over from right to left as they approach the crest of the grade. The intention of the legislature, we think, was to prevent *all* cars from being in the left lane when approaching the crest of a grade, not just those which cross over when approaching the crest. Consequently, we are of the opinion that the preposition "to" as used in paragraph 4 is synonymous with "on" or "upon." Obviously, if the preposition "to" is synonymous with "on" or "upon" with respect to this situation (approaching the crest of a grade), it has the same meaning when applied to the other specific situations set out in paragraph 4, including travel in the left lane within one hundred feet of an intersection.

We think that this interpretation of the meaning of the preposition "to" as used in paragraph 4 is in harmony with its use in other paragraphs in § 304.016. For example, it also is used in paragraph 2 thereof. That paragraph provides that the driver "may overtake and pass to the right of another vehicle * * * upon a city street with unobstructed pavement of sufficient width for two or more lines of vehicles in each direction." Plaintiff's interpretation of the preposition "to" as implying a crossing over and a change of lanes would mean that this permission to pass on the right of another vehicle applied *only* if he first crossed over from the left to the right lane of vehicles moving in the same direction in the process of passing "to the right of another vehicle." The same would be true under paragraph 2(3) which is applicable to a one-way street. Obviously, we think, this is not what the statute means. Rather, it means that it is permissible on such a city street to pass on the right "when such movement may be made in safety" and there is no requirement that there has been any crossing over from one lane to another as a condition to that permission. Thus, the preposition "to" as used in paragraph 2 is synonymous with "on" or "upon," just as we find it to be in paragraph 4 of the section. We shall not lengthen this opinion with a discussion of the other paragraphs of the section and the use of the preposition "to" therein, but we believe them to be consistent with this interpretation.

Counsel have cited no Missouri cases interpreting this section of the statute in its present form, and we have found no case in our research on the subject. Cases are cited by counsel from other jurisdictions which interpret statutes containing identical or substantially identical language. The cases of Harbert v. Mathis, Tex.Civ. App., 230 S.W.2d 380, and Young v. Blue Line Storage Co., 242 Iowa 125, 44 N.W.2d 391, reach conclusions which are in harmony with the views herein expressed. The cases of Lemkie v. Boice, 329 Mich. 278, 45 N.W.2d 288; Clark v. Sumner, Fla., 72 So.2d 375, and Hendrick v. Strazzulla, Fla. App., 168 So.2d 156, reach opposite results. We have considered these cases, but see no useful purpose in discussing and analyzing them in this opinion. Those who are interested may read the cases for themselves. Obviously, from what we have said, we believe that the interpretation made in the Texas and Iowa cases is the proper one.

■ Plaintiff makes the further assertion with respect to § 304.016 that it was intended only to prevent collisions between vehicles proceeding on the thoroughfare in the same or opposite directions and would not apply to traffic entering from an intersecting or side street, and is not for the benefit of a person entering the highway from said intersecting or side street. Plaintiff cites and relies upon the case of Magill v. George, 347 Ill.App. 6, 105 N.E.2d 808, which so interpreted an Illinois statute. We do not agree that our statute should be so interpreted or is so limited. Rather, we agree with the reasoning of the Texas court in the case of Harbert v. Mathis, supra, wherein it said, 230 S.W.2d l. c. 383: "In point No. 2 appellant contends that Section 57 of Article 6701d, supra, was not enacted for the protection of persons operating motor vehicles in the same direction and its violation could not be the basis of charging him with negligence per se. We cannot agree with appellant's contention as to the limited purposes of the statute in question. The object of Section 57 was to eliminate the hazard of cars being operated on the left side of the roadways under certain conditions and the object of Section 57(a) 2 was to eliminate such hazard within 100 feet of intersections, and was for the benefit and protection of all persons and vehicles using the roadway at or near the intersection regardless of the direction they were traveling." See also Teters v. Kansas City Public Service Co., Mo., 300 S.W.2d 511, 516, wherein the court in considering § 304.010 which deals with the manner of operation of motor vehicles on the highways, said: "The purpose of the law is the protection of the life, limb and property of all persons riding, driving, or otherwise upon the highways."

■ We need not consider what would be an excusable violation of the statute under the line of cases such as Wilson v. Shumate, Mo., 296 S.W.2d 72, and Edwards v. Mellen, Mo., 366 S.W.2d 317, which recognize that there may be proof of legal excuse or avoidance for failure to comply with a statutory duty by reason of an occurrence without fault on the part of the person involved which made compliance with the statute impossible at the moment complained of and which proper care on his part would not have avoided. Plaintiff makes no such contention in this case. Her claim is simply that the statute has no application unless there is a crossing over within the 100 foot area. Under these facts, we hold that plaintiff in driving the entire 100 feet in the left lane was guilty of negligence as a matter of law, and that such negligence bars recovery on the basis of primary negligence in this case.

■ The other question for determination on appeal is whether plaintiff made a submissible case under the humanitarian doctrine. In deciding this question, we will consider the evidence in the light most favorable to plaintiff. Lane v. Wilson, Mo. App., 390 S.W.2d 943.

The proposition briefed by plaintiff on appeal is that defendant could have stopped

or slackened her speed after plaintiff was in a position of imminent peril and thereby could have avoided the collision. Plaintiff reasons thus: She was in a position of imminent peril when she was 48 to 51 feet (three car lengths) north of the north edge of the "T" intersection with 53rd Street. At that point she first saw defendant's car about one car length (16 to 17 feet) from the edge of Raytown Road. Defendant was traveling west on 53rd toward Raytown Road at 10 miles per hour. Actually, defendant would travel at least 27.2 feet from that point before reaching Raytown Road for a turn to the right. This was true, says plaintiff, because the bell-like intersection by 53rd Street was 62 feet wide and the hypotenuse of the triangle to the north would be 27.2 feet. Defendant could have stopped within that distance, according to plaintiff.

There are various difficulties with plaintiff's position. In the first place, plaintiff's computations of the distance defendant would travel in turning to the right are on the assumed premise that the additional width of the intersection was one-half on the north and one-half on the south side of the main portion of 53rd Street. The evidence does not support that assumption. Actually, 53rd Street does not bell out appreciably to the north. The additional width is to the south. Officer Robinson, a witness for plaintiff, so testified, and plaintiff's Exhibit 1 clearly so shows. There was no evidence to the contrary. No one testified as to any measurements to demonstrate that a vehicle 16 to 17 feet east of the edge of Raytown Road would travel a greater distance than 16 to 17 feet in reaching Raytown Road to turn right, as defendant undertook to do. Consequently, we must consider the case on the basis that defendant had 16 to 17 feet to travel before being in the northbound lane of Raytown Road.

■■■■ The next difficulty in plaintiff's position is that no evidence was offered to show the distance in which defendant's car could have been stopped. There was no evidence as to her reaction time. We can, in the absence of evidence, assume a reaction time of three-fourths of a second (Vietmeier v. Voss, Mo., 246 S. W.2d 785). In that period defendant would have traveled approximately 11 feet before her brakes were applied. That leaves only 5 or 6 feet in which to stop before she would be in the northbound lane of Raytown Road where the collision occurred. As mentioned, plaintiff offered no evidence of the braking distance required to stop a car at 10 miles per hour. This court has stated in De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 636, that a car with good brakes traveling 10 miles per hour, can be stopped in 9 feet. However, that would put defendant 3 to 4 feet onto the northbound lane of Raytown Road and would not be sufficient to avoid the collision. In addition, plaintiff testified that there were wet spots on the pavement, and such spots, if located where defendant would be applying her brakes, would affect the braking distance. Obviously, in the absence of evidence, the contention that defendant could have stopped and avoided the collision is based on speculation and surmise and was not sufficient basis to make a submissible case under the humanitarian doctrine for failure to stop.

Plaintiff then asserts that even if defendant could not have stopped, she could have slackened her speed sufficiently to have avoided the collision. Again, there is no testimony to show that this could have been done. The evidence and exhibits show that the left front ends of the two vehicles collided. We cannot speculate that defendant could have so slackened her speed in the very few feet she traveled after the reaction period so as to have enabled plaintiff's car to have passed by before defendant reached Raytown Road. Such close calculations and tolerances are too fine to serve as a basis for imposition of liability under the humanitarian doctrine.

Plaintiff also makes the point that the place and time when one comes into a position of imminent peril is for the jury. This is true where a submissible case is made, but there was no evidence on which to justify any finding of a position of imminent peril at a point further away from the intersection than 48 to 51 feet because there was no evidence that the defendant could have seen the plaintiff beyond that point, and actually we do not understand plaintiff's brief to assert that plaintiff was in a position of imminent peril prior to that time. Where, as here, it is clear that plaintiff did not make a submissible humanitarian case, it is proper for the court to sustain the defendant's motion rather than submit the matter to the jury.

The judgment is affirmed.

All of the Judges concur.