MANN, APPELLEE, *v.* LEWIS, APPELLANT.

[Cite as Mann v. Lewis (1970), 22 Ohio St. 2d 191.]

(No. 69-598—Decided May 27, 1970.)

*Messrs. Roudebush, Adrion, Brown, Corlett & Ulrich*
and *Mr. Allen N. Corlett*, for appellee.

*Messrs. Meyers, Stevens & Rea* and *Mr. Henry A.
Hentemann,* for appellant.

SCHNEIDER, J. The question for resolution is the cor-
rect meaning of R. C. 4511.30(C) in the context of a civil

action for the negligent operation of a motor vehicle, where, at the time of the collision, the plaintiff's vehicle was left of the center line of the roadway with reference to his direction of travel and the plaintiff was in the act of passing or having passed another vehicle traveling in the same direction, and the defendant's vehicle was about to enter, or had entered that same lane of travel from an intersecting street.

The factual situation may be more clearly portrayed thus:

The evidence is conflicting as to whether plaintiff had proceeded to the left of center within or beyond 100 feet north of the intersection and as to whether any part of defendant's vehicle was within the intersection; or whether the collision occurred by reason of the plaintiff's "fish-tailing" the rear of his vehicle into the front of defend-

ant's vehicle. In any event, it is undisputed that plaintiff was southbound in the northbound lane at the point of impact and that, wherever defendant's vehicle was at the point of impact, it was not in the southbound lane of Route 306.

Our view of the case, and of the risk imposed upon the plaintiff in the instant situation by R. C. 4511.30, surmounts the evidentiary conflict. That section provides:

"No vehicle or trackless trolley shall, in overtaking and passing traffic, or at any other time, be driven to the left of the center or center line of the roadway under the following conditions:

"(A) When approaching the crest of a grade or upon a curve in the highway, where the operator's view is obstructed within such a distance as to create a hazard in the event traffic might approach from the opposite directions;

"(B) When the view is obstructed upon approaching any bridge, viaduct, or tunnel;

"(C) *When approaching within one hundred feet of or traversing any intersection* or railroad grade crossing, unless compliance with this section is impossible because of insufficient roadway space.

"This section does not apply to vehicles or trackless trolleys upon a one-way roadway or upon a roadway where traffic is lawfully directed to be driven to the left side." (Emphasis supplied.)

The trial court charged on this statutory rule of conduct as follows:

"Now, we have another rule. No motorist shall, in overtaking and passing traffic, when approaching within 100 feet or traversing any intersection; in other words, no motorist shall overtake or pass when approaching within 100 feet or traversing any intersection unless the compliance of this section is impossible because of insufficient roadway space. Violation of this law against driving across the center line is negligence."

With the exception of the phrase, "unless the compliance of this section is impossible because of insufficient

roadway space," which is inapplicable to this case because there was no evidence of insufficient roadway space, we find no error in the charge.

On the other hand, the Court of Appeals was of the opinion "that the statute was intended to prohibit one driving his vehicle from the right side of the center or center line of the roadway to the left of said center or center line of said roadway within one hundred feet of an intersection, to pass another vehicle.

"In other words, the statute prohibits one from crossing the center line to overtake or to pass another vehicle when within one hundred feet of an intersection. . . .

" . . .

"We find no evidence in the record of the appellant beginning to pass less than one hundred feet from the intersection.

"Therefore, in our opinion, the trial court should not have charged the jury as to any possible negligence on the part of the appellant by reason of being left of center within one hundred feet of an intersection where the evidence is uncontradicted that at the time of the accident he was in the process of completing a passing action which began more than one hundred feet from the intersection."

Apparently, that court holds the view that it is perfectly permissible for a motorist to cross to the left of center at a distance of 101 feet ahead of an intersection and to remain in the left of center lane through the intersection but that the same act would be impermissible if commenced at a point 99 feet from the intersection. We need not resort to semantics or grammatical exercises to discern the illogic of that view. It is transparent.

" . . . The object of . . . [a statute virtually identical to R. C. 4511.30] was to eliminate the hazard of cars being operated on the left side of the roadways under certain conditions and the object of . . . [a paragraph virtually identical to paragraph (C)] was to eliminate such hazard within 100 feet of intersections, and was for the benefit and protection of all persons and vehicles using the roadway at or near the intersection regardless of the direction they

were traveling." *Harbert* v. *Mathis* (Tex. Civ. App. 1950), 230 S. W. 2d 380, 383.

Restated, the statute manifests "the intention of the legislature to prohibit a car from *being on* the left hand side of the road undertaking to pass another car going in the same direction while within 100 feet of any hazards. The entire statute puts emphasis upon the prohibiting of overtaking and passing another car headed in the same direction except at a safe distance from places where hazards and dangers might be anticipated." (Emphasis supplied.) *Rayborn* v. *Freeman* (Miss. 1968), 209 So. 2d 193, 199. Accord: *Young* v. *Blue Line Storage Co.* (1950), 242 Iowa 125, 44 N. W. 2d 391; and *American Products Co.* v. *Villwock* (1941), 7 Wash. 2d 246, 109 P. 2d 570.

In our view, appellee's vehicle was to the left of center at his own risk and in a position of hazard to appellant who, on this record, was either stopped short of the highway or was lawfully using the intersection and the eastern half of the roadway. No claim of failure to stop on his part or to yield the right-of-way was alleged against him in the petition. (However, the jury was instructed on those issues and found in favor of the appellant.)

On the other hand, appellee was negligent as a matter of law at the time of the collision and the claim that the intersection was unmarked and unnoticeable was unavailable to him. *Chambers* v. *McFerren* (1959), 168 Ohio St. 398, paragraph three of the syllabus.

Finally, it is unnecessary for us to consider whether the trial court erred in instructing the jury on the assured-clear-distance-ahead rule. In the petition, the sole specification of negligence charged against appellant was that by his act of entering the intersection, appellee's "assured clear distance ahead was reduced to nothing." Appellee interposed no objection to the court's charge on that rule. Indeed, he claimed no error in this regard in the Court of Appeals, which, *sua sponte*, held the charge erroneous.

R. C. 2321.03 provides, in part, that "error can be predicated upon erroneous statements contained in the charge, *not induced by the complaining party,* without exception be-

ing taken to the charge." (Emphasis supplied.) Our conclusion is that appellee must be held to have induced the charge of which he now complains, and which the Court of Appeals found erroneous.

The essential meaning of the word "induce" is "to lead" or "to move." It is the mildest form of persuasion, of which the word "prevail" connotes the strongest. By its careful choice of that word, the General Assembly intended that the slightest *affirmative* act of a party, which could reasonably be said to cause the trial court to act in a particular manner, requires an objection or exception if a reversal is to be predicated upon that act of the court.

Another viable reason why a new trial, free of the issue of assured clear distance ahead, should not be ordered, is presented in this case. It is apparent that the absence of a charge on that issue in another trial would not reasonably result in a different verdict. *Smith* v. *Flesher* (1967), 12 Ohio St. 2d 107, 111, 112; *Hallworth* v. *Republic Steel Corp.* (1950), 153 Ohio St. 349. The jury in this case resolved the questions of appellee's negligence *per se,* the possibility of appellant's negligence in failing to yield the right-of-way or to stop at the intersection, as well as the proximate cause of the collision, all against appellee and in favor of appellant. *Sites* v. *Haverstick* (1873), 23 Ohio St. 626. Moreover, the jury returned a general verdict and was not interrogated. *Centrello* v. *Basky* (1955), 164 Ohio St. 41; *State, ex rel. Lattanner,* v. *Hills* (1916), 94 Ohio St. 171.

Inasmuch as appellant, in our view, would have been entitled to a directed verdict in his favor if it had been requested, we have no other course but to reverse the judgment of the Court of Appeals and affirm the judgment of the trial court entered upon the verdict of the jury.

*Judgment reversed.*

O'NEILL, C. J., LEACH, HERBERT, DUNCAN and CORRIGAN, JJ., concur.

LEACH, J., of the Tenth Appellate District, sitting for MATTHIAS, J.

HERBERT, J., concurring. While I concur in the result reached by my colleagues, I do so with some trepidation.

Stretches of two-lane roadway where one vehicle can pass another without at some point being left of center and within 100 feet of a side-road are fast disappearing. It has not been the general practice of highway officials to "yellow line" for a distance of 100 feet back from every two-lane state roadway intersection in Ohio. Thus, many motorists have not realized that being left of center within 100 feet of even a small "T" type of state roadway intersection can bring a fine of $50. R. C. 4511.99.

The General Assembly should re-examine this section of our traffic laws in light of modern conditions.