John C. REUILLE, Appellant
(Defendant Below),

v.

Brenda BOWERS, Cynthia Bowers, Robert Bowers, and Merlin Bowers, Appellees (Plaintiffs Below).

No. 3–1077A257.

Court of Appeals of Indiana, Second District.

Sept. 11, 1980.
Rehearing Denied Nov. 26, 1980.

John P. Price, Grace M. Curry, David O. Tittle, Bingham, Summers, Welsh & Spilman, Indianapolis, William F. McNagny, Barrett, Barrett & McNagny, Fort Wayne, for appellant.

Ronald L. Sowers, M. Robert Benson, Sowers and Benson, Fort Wayne, William Colson, William Hicks, Colson and Hicks,

Miami, Fla., John W. Whiteleather, Jr., Whiteleather and Whiteleather, Columbia City, for appellees.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant–appellant John C. Reuille appeals a $773,500 judgment in a jury trial involving a highway auto collision in which the trial court granted judgment in favor of the plaintiffs–appellees, Brenda Bowers, Cynthia Bowers, Robert Bowers and Merlin Bowers (Bowers) on the evidence at the close of all the evidence, claiming (inter alia) lack of duty, excuse for violation of a statute, lack of sole proximate cause, intervening cause, and excessive damages.

We reverse.

## FACTS

The facts most favorable to the appellant–defendant Reuille reveal that on the morning of September 24, 1974, at approximately 9:00 a. m., Reuille was driving to work in a westerly direction along U.S. 30, a two lane highway. About four or five miles from the "T" intersection of Franke Road he put his car on "cruise control" at 55 miles per hour. About seven or eight tenths of a mile from this intersection as he rounded a curve, he observed two cars in his lane ahead traveling slower than he. When the first car was about fifty feet in front of him (at about three tenths of a mile from Franke Road) he pulled into the left lane of the two lane highway to pass. About 800 feet from the intersection, when he was three–fourths of the way around the first car, he noticed the next car ahead was going even slower than the car he was passing and that the gap between the two cars was narrowing so that only about fifty feet remained. At this point he decided to pass the second car.

As he started to pass the second car Reuille saw a small yellow Vega (in which the Bowers were passengers) at least fifty feet

from the highway intersection proceeding on Franke Road at approximately ten miles per hour in a northerly direction towards the highway. When he was about two hundred feet from the intersection Reuille realized the Vega was continuing to proceed onto the highway and into his south or eastbound lane. He applied his brakes. The nearly head–on collision occurred about fifty feet east of the intersection and about nine feet south (to the left) of the center line of Highway 30.

Mrs. Whitacre (not a party) was driving the Vega containing her son and the three Bowers children (Brenda, age 6, Cynthia, age 10, and Robert, age 14).

The day was bright and clear. From thirty–seven feet back from the intersection the view from Franke Road was clear to the east for a distance of eight tenths of a mile. Mrs. Whitacre testified that she stopped at the stop sign, looked both ways, and proceeded to turn right onto the highway. She did not see the Reuille car until the instant before the collision. Reuille's car produced 140 feet of skid marks to the point of impact and another twenty–four feet of skid marks beyond that point. The Vega produced no skid marks before impact, although it made fifty–five feet of marks on the pavement after that point.

Bowers' complaint alleged that Reuille negligently caused a collision between his vehicle and the Vega driven by Carol Whitacre in which the plaintiffs were passengers, causing injuries and damages to the plaintiffs.

At trial Reuille presented no evidence, but rested following the plaintiffs' presentation. However, he was called as a witness by the Bowers and did testify. The Bowers then moved for Judgment on the Evidence against Reuille on the issue of liability, which motion reads as follows:

Come now plaintiffs, by counsel, at the close of all the evidence and before argument and moves [sic] the court pursuant to T.R. 50 (Judgment on the evidence

Directed Verdict) for judgment on the evidence on the following questions (issues) of Defendant's liability for the following reasons and on the following grounds:

(1) There is not an issue as to the negligence of the Plaintiffs (i. e. contributory negligence), per the pretrial order and the admission of the Defendant, and the evidence is without conflict.

(2) As a matter of law based upon the evidence presented, the evidence is without conflict and susceptable [sic] of only the one inference that the defendant John Rueille [sic], was in the left lane of U.S. 30 (east bound lane) in a westerly direction within 100 feet of the intersection of U.S. 30 and Franke Road at the time of the collision without legal justification or excuse, thus he was negligent as a matter of law. We incorporate our liability brief filed herewith in support hereof.

(3) The evidence is without conflict and the only inference therefrom and thereof is that the aforesaid negligence of Defendant, John Reuille, was a substantial producing cause of the injuries sustained by the Plaintiffs, a proximate cause thereof. By reference thereto Plaintiff's [sic] attach their liability brief filed herewith in support thereof and restatement of torts 2d on proximate cause, and Prosser on torts cause in fact and proximate cause.

WHEREFORE, Plaintiffs pray the court to grant them judgment on the evidence/directed verdict against the Defendant on the questions aforesaid (liability of Defendant–negligence as a matter of law and a proximate cause of the injuries sustained) and for all other just and proper relief in the premises.

The court sustained the motion. Prior to final arguments the court instructed the jury as follows:

COURT: The time has come for the hearing of final argument by counsel. Plaintiffs' counsel has the opportunity to open and close final argument, with counsel for defendant speaking in between those two times. I'll tell you now that the Court has ruled as a matter of law that the defendant, John Reuille, was liable for the injuries, if any, sustained by the parties so rather than having two decisions to make as you were informed in opening statements you will determine just the damages, if any, incurred by the parties. Mr. Colson, you may proceed.

The jury returned separate verdicts in favor of each of the three Bowers children and their father for a total amount of $773,500.00, and the court entered judgments based upon the verdicts.

Following denial of his Motion to Correct Errors, Reuille perfected this appeal.

## ISSUES

Because we reverse, we address only these issues:

1. Did Reuille owe a duty to the Bowers under Ind.Code 9–4–1–69(a)(2)[1] considering the type of intersection involved and the class of persons injured?

2. Did material issues of fact exist concerning Reuille's violation of a statutory duty, and was such violation excused or justified?

### I.

*ISSUE ONE*--Did Reuille owe a duty to Bowers under Ind.Code 9–4–1–69(a)(2) (hereinafter the Passing Statute) considering the type of intersection involved and the class of persons injured?

A. *Applicability of the Statute.*

*PARTIES' CONTENTIONS*--Reuille contends that the Passing Statute relating to

---

1. Ind.Code 9–4–1–69(a)(2) reads:

 (a) No vehicle shall at any time be driven to the left side of the roadway under the following conditions:

 (2) When approaching within one hundred [100] feet of or traversing any intersection or railroad grade crossing.

intersections is not applicable because the meeting of Highway 30 and Franke Road does not constitute an intersection protected by the statute.

Bowers argues that the undisputed evidence established that the junction is an intersection governed by the Passing Statute.

CONCLUSION—There is no evidence to support the argument that the junction of Franke Road and Highway 30 does not constitute an intersection, therefore the trial court properly made findings on this issue as a matter of law.

■ A duty to the plaintiff, the first of the three negligence elements,[2] is stated somewhat differently when statutory negligence is alleged:

First, the court must scrutinize the statute in question and consider "the purpose of the enactment, the persons whom it was intended to protect, and the injuries which it was intended to prevent" to determine if the statute is such that the violation complained of would constitute negligence. *Sheridan v. Siuda* (1971), 150 Ind.App. 395 at 406, 276 N.E.2d 883 at 889. In making this inquiry, the trial court is interpreting the statute to ascertain whether a particular duty (or prohibition) exists.

*Smith v. Cook* (1977), Ind.App., 361 N.E.2d 197, 200. The trial court must determine as a matter of law the specific requirement, the absolute standard of conduct or absolute duty, to which the defendant is obligated to conform.

The Passing Statute (Ind.Code 9–4–1–69(a)(2)), which Reuille violated, provides:

(a) No vehicle shall at any time be driven to the left side of the roadway under the following conditions:

. . . . .

(2) When approaching within one hundred [100] feet of or traversing any intersection or railroad grade crossing.

■ Whether the joining of two roadways is an intersection is generally a question of fact to be determined after considering several factors, including the statutory definition of an intersection,[3] the character of the roads, their appearance, whether the roads are public or private, the type of construction, widths and amount of use, the presence or absence of traffic control devices, and the drivers' familiarity with the intersection. *Chapman v. Harrison Pipeline Co.* (1972), La.App., 261 So.2d 82; *Guillory v. Travelers Ins. Co.* (1970), La.App., 241 So.2d 772; *Fontenot v. Pan American Fire & Casualty Co.* (1968), La.App., 209 So.2d 105; *Normand v. American Home Assurance Co.* (1965), La.App., 171 So.2d 804; *Reese v. National Surety Corp.* (1954), 224 S.C. 489, 80 S.E.2d 47; Annot., 7 A.L.R.3d 1204, 1243–56 (1966); Annot., 53 A.L.R.2d 850 (1957).

The relevant evidence on this issue at trial, consisting of maps, charts, photographs, and the testimony of Merlin Bowers, indicates that Franke Road progresses northwest forming a "T" junction with Highway 30 at an acute angle (fifty–one degrees). The surface of Franke Road is asphalt, similar to that of the highway, and both are two lane roads.

Franke Road is a branch of the main access from western Ohio to U. S. Highway

---

**2.** Negligence consists of three elements, a duty to the plaintiff, the defendant's failure to conform his conduct to the requisite standard of care, and an injury to the plaintiff resulting from that failure. *Johnson v. Bender* (1977), Ind.App., 369 N.E.2d 936; *Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701; *Pontiac–Chicago Motor Express Co. v. George Cassons & Son* (1941), 109 Ind.App. 248, 34 N.E.2d 171.

**3.** Ind.Code 9–4–1–15: Intersection. (a) The area embraced within the prolongation or connection of the lateral curb lines, or if none, then the lateral boundary lines of the roadways of two [2] highways which join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict.

30. An official highway sign on Highway 30 indicates to westbound traffic the approach of an intersection of a public roadway to Maples, Indiana, to–wit, Franke Road.

■ Reuille testified that he was aware of this intersection from his drive to work along Highway 30 for fifteen years. Reuille presented no evidence to dispute the fact that the physical characteristics of Franke Road clearly qualify it as an intersection, except, he argues first that simply because it is a "T" intersection or side road, rather than a through crossing, it is not an intersection. The majority view is to the contrary. See 2 P. Kelly, Blashfield Automobile Law and Practice § 112.3 at 603 (rev. 3rd ed. 1979) [hereinafter cited as Blashfield]; Annot., 7 A.L.R.3d 1204, 1233 (1966); Annot., 53 A.L.R.2d 850, § 5[b] (1957); Normand v. American Home Assurance Co., supra.

Secondly, Reuille takes the position that, as a matter of law, the choice by the State Highway Commission not to place markings indicating a no–passing zone along that section of Highway 30 removed that junction from constituting an intersection under the Passing Statute. He argues that Ind.Code 9–4–1–70[4] authorizes the State Highway Commission to investigate and designate especially hazardous portions of any highway as no–passing zones, and therefore the

Commission must make the exclusive determination of which junctions and crossings are classed as intersections under the Passing Statute.

■ From our reading of both statutes we can not conclude that the legislature intended any such limited interpretation of these safety laws. Reuille cites Faucette v. Christensen (1965), 145 Mont. 28, 400 P.2d 883, which endorses his view. However, as a safety statute, Ind.Code 9–4–1–69(a)(2) should receive a reasonable construction and interpretation. Northern Indiana Transit, Inc. v. Burk (1950), 228 Ind. 162, 89 N.E.2d 905; Doering v. Walters (1923), 80 Ind.App. 194, 140 N.E. 74;[5] Eberhart v. Abshire (7th Cir. 1946), 158 F.2d 24 (a traffic safety statute, unlike a penal statute, should be construed liberally.) 26 I.L.E., Statutes § 171. We prefer to interpret this safety statute as seeking to protect all users of the highway from passing maneuvers at customarily hazardous highway locations whether marked by the Commission or not. Blashfield agrees with our interpretation: "Unless the statute provides otherwise, passing at an intersection is a statutory violation which is not excusable by the fact that there are no signs or markings indicating the presence of an intersection or a no-passing zone." Blashfield, supra at 604–605;[6] also: Garnett v. Hicks (1960), Ky., 333 S.W.2d 509; McGehee v. Cox

4. 9–4–1–70. No passing zones.–The state highway commission is hereby authorized to determine by an engineering and traffic investigation those portions of any highway where overtaking and passing or driving to the left of the roadway would be especially hazardous and may, by appropriate signs, or marks on the roadway, indicate the beginning and end of such zones and when such signs or markings are in place and clearly visible to an ordinarily observant person, every driver of a vehicle shall obey the directions thereof.

5. "The statute in question [Acts 1921, p. 115 (driver of vehicle to signal intentions to those to rear)] was enacted to promote the safety of the public traveling upon our public highways. It is essentially a police regulation, and the people at large have a direct interest in its enforcement, and it does not, therefore, belong

to that class of penal statutes which are construed strictly." Doering v. Walters, 80 Ind. at 196, 140 N.E. at 75.

6. Reuille raises an argument in his appellate brief for the first time. It is based on the directives given the State Highway Commission from the Manual of Uniform Traffic Control Devices, and he cites Ind.Code 9–4–1–125(f) as authority for all courts to take judicial knowledge of the rules and regulations so published. That section allows judges to take judicial notice of the Manual's authenticity and of the contents of the rules and regulations in the Manual; however, the Manual itself must be presented to the trial court to aid its decision before it may take such judicial notice of its contents. Such judicial notice should be taken at the trial where the opposing party has the opportunity for objection. Belcher v. Buesking

(1970), La.App., 233 So.2d 36; *Harbert v. Mathis* (1950), Tex.Civ.App., 230 S.W.2d 380.

Reuille offered no evidence or inferences which conflict or contradict the conclusions of law that the directives of this Passing Statute apply to Franke Road and Highway 30 as an intersection.

### B. *Parties Protected by the Statute.*

*PARTIES' CONTENTIONS*—Reuille contends that even if the Passing Statute is applicable because the location is an intersection, the statute did not impose a specific duty, or prohibit any conduct on his part, with regard to the Bowers children. He says that persons on a different road than that of the passing vehicle are not within the zone of danger presented by the passing maneuver involved under that statute.

Bowers aptly responds that by naming intersections as hazardous locations at which motorists are not to pass, the legislature clearly intended all persons at or near such intersections to be the parties protected.

*CONCLUSION*—The Passing Statute was enacted for the protection of all persons using, and in the immediate vicinity of, an intersection.

■ Reuille borrows from 7 Am.Jur.2d *Autos and Highway Traffic* § 222 (1963); *Smith v. Cook* (1977), Ind.App., 361 N.E.2d 197; and *Magill v. George* (1952), 347 Ill. App. 6, 105 N.E.2d 808, as supportive of the proposition that the Passing Statute, Ind. Code 9–4–1–69(a)(2), pertaining to overtaking and passing within 100 feet of intersections, regulates only traffic on that highway proceeding in the same and opposite directions. The court in *Magill* reasoned that because other statutes (such as those

found at Ind. Code 9–1–4–81 through 85) regulated conduct of vehicles approaching from different directions at intersections, the legislature did not intend for any other statutes to impose any duty or sanction concerning conduct at such locations. We reject this argument because the codification of the rights and duties of motorists at intersections in those sections does not necessarily address the additional hazards created by passing attempts. Thus, this Passing Statute may also be reasonably interpreted to apply to vehicles approaching and near each roadway which is part of the intersection.[7] And our broader view has been found to have merit:

> Plaintiff makes the further assertion with respect to § 304.016 [essentially the same as Indiana's Passing Statute, Ind. Code 9 4–1–69(a)(2)] that it was intended only to prevent collisions between vehicles proceeding on the thoroughfare in the same or opposite directions and would not apply to traffic entering from an intersecting or side street and is not for the benefit of a person entering the highway from said intersection or side street. Plaintiff cites and relies upon the case of *Magill v. George*, 347 Ill.App. 6, 105 N.E.2d 808, which so interpreted an Illinois statute. We do not agree that our statute should be so interpreted or is so limited. Rather we agree with the reasoning of the Texas Court in the case of *Harbert v. Mathis, supra,* [that] . . . *"the object of [the statute] was to eliminate the hazard of cars being operated on the left side of the roadways* . . . within 100 feet of intersections and was for the benefit and protection of all persons and vehicles using the roadway at or near the intersection regardless of the direction they were traveling." (Emphasis added).

(1978), Ind., 371 N.E.2d 417. Reuille did not present this evidence or argument to the trial court, it is therefore waived on appeal.

7. Reuille's argument is weakened because the Vega was on Highway 30 at the point of impact.

*Roach v. Lacho* (1966), Mo., 402 S.W.2d 344, 349; *see also Harbert v. Mathis* (1950), Tex. Civ.App., 230 S.W.2d 380, 383.[8]

What else if not a motorist entering the highway at an intersection? Hazards and risks associated with an intersection must necessarily include those caused by vehicles entering or crossing the highway, as well as vehicles making turns off that highway and those traveling along the highway. The design of both the Passing Statute and Ind. Code 9–4–1–81 to 85 is consistent with a maximum safety objective.

So the Bowers children were within the class of persons protected by the Passing Statute (Ind. Code 9–4–1–69(a)(2)) and Reuille had a duty to conform his conduct for their protection.

## II.

*ISSUE TWO*–Did material issues of fact exist as to Reuille's violation of a statutory duty and was such violation excused or justified?

### A. *Violation of the Statute*

Having found that the Passing Statute applies and that the Bowers are within the class of those protected thereby,[9] we reach Reuille's assertion that he was not in violation of that statute.

*PARTIES' CONTENTIONS*–While admitting that it is a narrow reading, Reuille

would have us believe that the Passing Statute does not prohibit completion of a passing maneuver which was begun more than 100 feet before the intersection.

Bowers challenges that argument as an inaccurate and unreasonably restrictive interpretation.

*CONCLUSION*–The Passing Statute prohibits motorists from being in the left lane anywhere within 100 feet of an intersection.

Again the parties favor us with cases supporting both sides of the argument. In *Clark v. Sumner* (1954), Fla., 72 So.2d 375 and *Lemkie v. Boice* (1951), 329 Mich. 278, 45 N.W.2d 288, under statutes nearly identical to our Passing Statute each court held that their statute prohibited a driver from changing his course of travel and driving over to the left side of a two lane highway within 100 feet of an intersection, but did not prohibit the driver from continuing to pass and proceed in the left lane where the change in lanes was made more than 100 feet away from the intersection.[10]

By this reasoning as long as the driver began his passing maneuver at least 101 feet before the intersection he may then continue the passing attempt in the left lane beyond the crest of a grade or into a curve in the highway, within 100 feet of a railroad grade crossing, or within 100 feet of a bridge, viaduct or tunnel, even when the view is obstructed, all without violating the Passing Statute.[11]

---

**8.** Also, although this question was not specifically at issue in *Mann v. Lewis* (1970), 22 Ohio St.2d 191, 259 N.E.2d 116, the Ohio Supreme Court quoted from *Harbert* as support for the jury's verdict in favor of the party who, in a factual situation strikingly similar to this case, had entered the intersection from a side roadway.

**9.** Following *Sheridan v. Suida* (1971), 150 Ind. App. 395, 276 N.E.2d 883, quoted in *Smith, supra*.

**10.** "In an opinion the trial court stated: 'if the Legislature meant to say in the amended act that you could not drive on the left side of the highway within 100 feet of or traversing any intersection, then the act certainly could and

should have used the preposition "on" instead of "to". Furthermore, it appears to the Court to be a more reasonable construction of the statute to hold that a vehicle was prohibited from changing its course of travel and attempting to drive to the left side of the highway within 100 feet of an intersection though was not prohibited from continuing to pass the vehicle providing the change in course had been made more than 100 feet away from the intersection.' We are in accord with this view." *Lemkie v. Boice*, 329 Mich. at 284, 45 N.W.2d at 291.

**11.** "Apparently, that court [the Ohio Court of Appeals in its decision below] holds the view that it is perfectly permissible for a motorist to cross to the left of center at a distance of 101

██ This is too fast a horse for us to ride. Reuille justifies such a restrictive reading to soften the severity of the statute in instances in which a motorist is prevented from returning to the right lane or might find it difficult to calculate the 100 feet mark if the highway is not marked by traffic signs or yellow lines.

A driver *is* required to proceed under the Passing Statute with the same care and caution required to comply with the preceding statute, Ind.Code 9–4–1–68, which admonishes the motorist:

> No vehicle shall be driven to left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event, the overtaking vehicle must return to the righthand side of the roadway before coming within one hundred [100] feet of any vehicle approaching from the opposite direction.

Agreeable to the view that the Passing Statute means exactly what it says, and motorists must plan accordingly, is *Mann v. Lewis*, 22 Ohio St.2d at 195, 259 N.E.2d at 119, which interprets a nearly identical statute:

> Restated, the statute manifests "the intention of the legislature to prohibit a car from *being on* the left hand side of the road undertaking to pass another car going in the same direction while within 100 feet of any hazards. The entire statute puts emphasis upon the prohibiting of overtaking and passing another car headed in the same direction except at a safe distance from places where hazards and

dangers might be anticipated." (Emphasis supplied.) *Rayborn v. Freeman* (Miss. 1968), 209 So.2d 193, 199. Accord: *Young v. Blue Line Storage Co.* (1950), 242 Iowa 125, 44 N.W.2d 391; and *American Products Co. v. Villwock* (1941), 7 Wash.2d 246, 109 P.2d 570.

In our view, appellee's vehicle was to the left of center at his own risk and in a position of hazard to appellant who, on this record, was either stopped short of the highway or was lawfully using the intersection and the eastern half of the roadway.

· · · · ·

On the other hand, appellee was negligent as a matter of law at the time of the collision and the claim that the intersection was unmarked and unnoticeable was unavailable to him. *Chambers v. McFerren* (1959), 168 Ohio St. 398, paragraph three of the syllabus, 155 N.E.2d 917.

*See also Young v. Blue Line Storage Co.* (1950), 242 Iowa 125, 44 N.W.2d 391; *Rouch v. Lacho* (1966), Mo., 402 S.W.2d 344; *Loving v. Mason* (1965), 206 Va. 613, 145 S.E.2d 131.

██ Reuille does not deny that he was in the left lane at a point less than 100 feet from the intersection. He had knowledge of the intersection when he began his passing maneuver nearly 1600 feet from the intersection. He nevertheless not only passed the first car, he proceeded to pass the second car and thus remained in the left lane as he approached and entered that part of the road which was within 100 feet of the intersection.

██ By violating the duty imposed on him by the Passing Statute, Reuille is presumed to have acted negligently. Such a presumption is, however, rebuttable and Reuille had the burden at trial of coming forward with evidence to rebut the pre-

feet ahead of an intersection and to remain in the left of center lane through the intersection but that the same act would be impermissible if commenced at a point 99 feet from the inter-

section. We need not resort to semantics or grammatical exercises to discern the illogic of that view. It is transparent." *Mann v. Lewis*, 22 Ohio St.2d at 194, 259 N.E.2d at 118.

sumption of his negligence. *Davison v. Williams* (1968), 251 Ind. 448, 242 N.E.2d 101; *New York Central Railroad Co. v. Glad* (1961), 242 Ind. 450, 179 N.E.2d 571; *Blankenship v. Huesman* (1977), Ind.App., 362 N.E.2d 850. The Indiana Supreme Court has recognized the effects of violation of a safety statute:

> Generally speaking, the violation of a statute prohibiting a particular act or requiring a particular precaution is negligence as a matter of law. It has long been the rule in this state that "Where a standard of duty is fixed, and its measure defined by law, the omission of that duty is negligence *per se*," *Prest-O-Lite Co. v. Skeel* (1914), 182 Ind. 593, 600, 106 N.E. 365, 368, when the duty was owed to the person injured through the violation thereof.

> It is recognized, however, that prudence sometimes requires the doing of an act which would otherwise be a violation of the "law of the road," and liability therefor may sometimes be avoided by showing that under the circumstances of the particular case the violation was justifiable or excusable. This is on the theory that statutes of the kind under consideration are to be reasonably construed, and that a statutory duty may be modified by the peculiar circumstances of a particular case. 65 C.J.S., Negligence, § 19h, p. 426.

*Larkins v. Kohlmeyer* (1951), 229 Ind. 391, 398, 98 N.E.2d 896, 899.

B. *Evidence of excuse or justification.*

*PARTIES' CONTENTIONS*--Reuille seeks to bring himself within the excuse or justification exception to the statutory negligence per se rule in the case of safety statutes regulating the public roadways.

Bowers acknowledges the exception but argues that such excuse must be based on facts which could make it impossible to comply with the statute, and Reuille has presented no facts from which such an impossibility could be proven or inferred.

*CONCLUSION*--Reuille presented evidence sufficient to raise an inference that, under the circumstances, he may have been justified in violating the Passing Statute, so that this issue should have been submitted to the jury.

Both the Indiana Supreme Court and Court of Appeals have dealt on past occasions with the subject of negligence per se and the violation of a motor vehicle safety statute.

Prior to 1916, Indiana law seemingly made no distinction between the violation of a motor vehicle safety statute (or ordinance) and the violation of any other statute. *See, e. g., Hamilton, Harris & Co. v. Larrimer* (1915), 183 Ind. 429, 105 N.E. 43. Regardless of the type of statute, the violator was considered negligent as a matter of law and was liable for all injuries incurred if his negligence was the proximate cause thereof. The violator was not provided the opportunity to defend by explaining why, under the circumstances, he had not acted in accordance with the statute.

In 1916, the Indiana Court of Appeals carved out an exception to this general rule stating:

> While the general rule is as above stated, and the violation of such statute or ordinance is *prima facie* negligence *per se*, nevertheless there may be facts and circumstances which will excuse a technical violation of an ordinance or statute and render it improper for the court to declare as a matter of law that such violation constitutes actionable negligence
>
> . . . .
>
> We do not find any direct authority for so stating the foregoing exception to the general rule that the violation of a statute, or ordinance resulting in an injury, is negligence *per se*, but reasoning by analogy, and on principle, such exception should be recognized, is reasonable, and tends to promote justice and the practical enforcement of the spirit and purpose of the statutes and ordinances to which reference is made.

*Conder v. Griffith* (1916), 61 Ind.App. 218, 224, 111 N.E. 816, 818–19. And the Indiana Supreme Court expressly adopted this position in *Jones v. Cary*:

> While the violation of such a statutory regulation does not conclusively establish negligence, it is *prima facie* evidence of negligence and places on the opposing party the duty of producing evidence to show a valid excuse for such violation. 5 Amer.Jur. § 657, p. 865; *Conder v. Griffith* (1916), 61 Ind.App. 218, 224, 111 N.E. 816.

219 Ind. 268, 284, 37 N.E.2d 944, 951.

■ Indiana law is now well established that proof by a party of violation of a motor vehicle safety statute is *"prima facie evidence of negligence, subject to being overcome by proof to the contrary. . ."* *Larkins v. Kohlmeyer*, 229 Ind. at 400, 98 N.E.2d at 900.[12]

Not quite as settled in Indiana is what proof the party rebutting the presumption of negligence need present. *Larkins* and its forerunners [13] establish that in order to rebut the presumption of negligence the party must show "that under the circumstances of the particular case, the violation was justifiable or excusable." *Larkins v. Kohlmeyer*, 229 Ind. at 398, 98 N.E.2d at 899. Generally, in these earlier cases excuse or justification was found only when it was impossible for the individual to comply with the statute because of either:

1. An emergency not of his own making or

2. circumstances over which the individual had no control.

It appears, however, that this strict standard of rebutting the presumption of negli-

gence has evolved into a more lenient test. Recent Indiana Supreme Court cases have broadened the proof needed to rebut the presumption of negligence. The standard now does not appear as harsh. As stated in *Davison v. Williams,*[14] supra:

> As for the question of what will constitute proof sufficient to rebut the presumption of negligence raised by violation of a safety regulation, we believe the best test for a jury to follow is:
>
> > Where a person has disobeyed a statute he may excuse or justify the violation in a civil action for negligence by sustaining the burden of showing that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law.

251 Ind. at 457, 242 N.E.2d at 105; and in *Bixeman v. Hall* (1969), 251 Ind. 527, 531–32, 242 N.E.2d 837, 839:

> As we recognized recently in the case of *Davison v. Williams* (1968), 251 Ind. 448, 242 N.E.2d 101, the factor of "fault"— lack of reasonable care—is the factor upon which the presence or absence of negligence depends. It was held in *Davison* that where an adult person violates a safety regulation, the proof of that violation will raise only a rebuttable presumption of negligence which can be overcome by proof that the party guilty of the violation exercised the care required of a reasonably prudent adult under similar circumstances.

*See also Thornton v. Pender* (1978), Ind., 377 N.E.2d 613.

■ Therefore, under this more liberal test, we cannot look solely to whether it

---

**12.** The violation of a motor vehicle safety statute may also be *prima facie* evidence of contributory negligence and if the plaintiff cannot rebut this presumption, his recovery is barred. *New York Central Railroad v. Glad, supra.*

**13.** *See, e. g., Northern Indiana Transit, Inc. v. Burk* (1950), 228 Ind. 162, 89 N.E.2d 905; *Jones v. Cary, supra; Rentscher v. Hall* (1946), 117 Ind.App. 255, 69 N.E.2d 619; *Conder v. Griffith, supra.*

**14.** *See* Annot., 38 A.L.R.3d 521 (1971) for an in-depth discussion of *Davison v. Williams, supra,* and the law in other jurisdictions concerning the effect of violation of a safety equipment statute as establishing negligence in automobile accident litigation.

was impossible for Reuille to comply with the statute because of an emergency or circumstances outside of his control. We must measure Reuille's conduct against that of a prudent person acting reasonably under the circumstances.[15] And the question of whether an individual's acts conform with those of a reasonable person is generally one of fact for the jury.

Here the trial court at the close of all the evidence directed a verdict for the Bowers holding Reuille liable as a matter of law for the injuries incurred because of his negligence.

Trial Rule 50(A) is the lamp that guides our feet in determining whether the trial court acted properly in withdrawing the negligence issue from the jury. In pertinent part it says:

Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict.

One side of the coin of T.R. 50(A) is that when a trial court considers a motion for a judgment on the evidence in favor of the party with the burden of proof, it must determine whether a verdict for the non moving party would be clearly erroneous as contrary to the evidence because the evidence is insufficient to support such a verdict. *Huff v. Travelers Indemnity Co.* (1977), 266 Ind. 414, 363 N.E.2d 985; *Heiny v. Pennsylvania R. Co.* (1943), 221 Ind. 367, 47 N.E.2d 145. The other side of the coin of T.R. 50(A) is that the evidence and any reasonable inferences therefrom must be construed most favorably to the party opposing the motion and the trial court may not substitute its judgment for that of the jury on questions of fact or grant the motion because the evidence preponderates in favor of the moving party. *Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701; *Geyer v. City of Logansport* (1977), 267 Ind. 334, 370 N.E.2d 333; *Mamula v. Ford Motor Co.* (1971), 150 Ind.App. 179, 275 N.E.2d 849; *Beem v. Steel* (1967), 140 Ind.App. 512, 224 N.E.2d 61.

Our Supreme Court has also described when it is proper to grant the motion when the party with the burden of proof is the movant:

When this Court and the Legislature approved Trial Rule 50 in its present form, the following emphasized language was inserted in paragraph (A) of the rule as first proposed:

"Where . . . a verdict is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it . . . ."

3 Harvey, Indiana Practice 365 (1970). This is key language which has an extensive history. It is the standard to be applied when reviewing a verdict for the party having the burden of proof.

When this Court and the Legislature approved Trial Rule 59, the following language was deleted from 59(B):

"No distinction shall be made between a verdict or decision which is not sustained by 'sufficient evidence' or which is 'contrary to law,' both terms including either to an excess or deficiency of evidence or both."

4 Harvey, Indiana Practice 111 (1971).

This deletion is a manifestation of an intent to maintain the prior meaning of the words "sufficient evidence" as that

---

15. We note for clarification that the test we are applying here is not that of the reasonable person acting in an emergency situation. No claim has been made nor do we find that Reuille acted negligently once he was confronted with the emergency, i. e., when he saw the yellow Vega turn onto the highway and applied his brakes. The negligence we are addressing occurred before Reuille's confrontation with the emergency, when he decided to pass the front car.

standard relates to the authority of the judge to grant a 59 motion. Trial Rule 59(E)(7) does authorize the judge to grant a judgment if he determines that the verdict is "clearly erroneous as contrary to . . . the evidence." This is new legal language. As a grant of authority it must be construed so as not to be in conflict with the constitutional mandate that the right to trial by jury shall be maintained inviolate. Ind.Const. art. 1, § 20. Where there is any dispute on the operative facts, the jury is the finder of fact, and it may choose to believe or disbelieve any witness. A party with the burden of proof may establish a prima facie case and the jury may, nonetheless, find against him.

*It is only where there is no reasonable dispute as to the facts, where the evidence for the party bearing the burden of proof is uncontradicted and unimpeached, that the trial court may enter judgment in favor of a party having the burden of proof.* [citations omitted.] (emphasis supplied)

*State ex rel. Peters v. Bedwell* (1978), 267 Ind. 522, 526–27, 371 N.E.2d 709, 712.

From these cases interpreting T.R. 50(A) we conclude that if there is sufficient evidence, or any inference therefrom, in the record before us to indicate that Reuille acted reasonably under the circumstances the case should have gone to the jury.

Sufficient evidence can be found, *inter alia,* in the testimony of Reuille responding to the following questions on direct examination: [16]

Q. And what happened as you went on by this automobile?

A. The rear car was going faster than the one in front and the distance between the two closed and when I completed my pass around the first car it was–it would have been a tight squeeze to squeeze in around the second one and when there wasn't anyone coming I proceeded to pass it.

Q. Well, you state that it would have been a tight squeeze, let me ask you if you had wanted to get in there, if there had been a semi coming I would assume that even though it were a tight squeeze you could have gotten your car in between the two vehicles, could you not, sir?

A. Probably, yes.

Q. So you decided at some point as you were passing to go on and pass the first car as well, is that correct?

A. True.

 According to this testimony, after Reuille entered the left lane and began passing the rear car, he realized that the rear car was going faster than the front car. Once abreast of the rear car Reuille concluded that it would be difficult to squeeze in between two cars. At this point he had three alternatives: (1) continue the passing maneuver and pass the front as well as the rear car, an act which would violate the Passing Statute, (2) squeeze in between the two cars and there is evidence that this course of conduct might have been unsafe, or (3) abort the passing maneuver, reduce his speed, and fall back behind the rear car.

Did Reuille act unreasonably in choosing the first alternative? What would a pru-

---

**16.** Additionally, the following sequence of questions on cross–examination raises the issue of whether Reuille acted reasonably:

Q. You mentioned that you passed a car and started to pull in, did you know that the car in front of the car you passed first was going substantially slower than the car you started to pass beforehand?
A. No, not beforehand.
Q. When did you first become aware of the fact that the front car was going quite a bit slower than the one behind it?

A. When I was about three–quarters the way around the second car.
Q. And you then discovered that the car you were passing and the car ahead of it, the distance between them was narrowing?
A. Correct.

. . . . .

Q. And as I understand it the only reason you didn't pull in was because these two cars had pulled up on each other?
A. Correct.

dent man do under these circumstances? There is conflicting evidence and inferences therefrom prohibiting us or the trial court from resolving the conflict. Trial Rule 50.[17]

Because the trial court judge erred in taking this issue away from the jury and entering judgment thereon, the judgment is reversed and we remand for a new trial.

ROBERTSON, P. J. (sitting by designation), and SULLIVAN, J., concur.

---

17. We recognize that if on remand the jury does in fact find Reuille negligent it also must determine that his negligence was the proximate cause of the injuries to the Bowers, and that there was no intervening or concurring negligence involved before he can be liable for the damages incurred by the Bowers. *Presto–O–Lite Co. v. Skeel* (1914), 182 Ind. 593, 106 N.E. 365. However, we need not address these issues at this time.