**FIRST BANK & TRUST COMPANY OF CLAY COUNTY, Guardian of Gordon D. Weber, A Minor, Appellant (Plaintiff Below),**

v.

**Rita J. BUNCH, Appellee (Defendant Below).**

**No. 1–1182A327.**

Court of Appeals of Indiana,
First District.

Feb. 29, 1984.

Rehearing Denied April 17, 1984.

Hansford C. Mann, Stephen L. Williams, Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, for appellant.

William W. Drummy, Patrick, Gabbert, Wilkinson, Goeller & Modesitt, Terre Haute, for appellee.

ROBERTSON, Judge.

First Bank and Trust Company of Clay County, as the guardian of Gordon D. Weber a minor, appeals a negative judgment rendered in favor of the defendant, Rita J. Bunch, on its negligence complaint. In its complaint, the Guardian sought recovery for injuries Weber received when he rode his bicycle across State Road 340 in front of Bunch's automobile and was struck by it.

The Guardian raises several issues; all of these issues are related to a final instruction given by the trial court which dealt with the speed limit at the accident scene.

The instruction read:

COURT'S FINAL INSTRUCTION NO. 16

Ladies and gentlemen of the jury I instruct you that the court has found as a matter of law that the Highway Commission of Indiana had not adopted a resolution regulating the speed limit on State Road 340 at the point of the collision in question. Therefore the speed limit which existed at the time and place would be that which was reasonable and prudent under the circumstances then and there existing, but no more than 55 miles per hour.

The Guardian argues this instruction was erroneous because: 1) it was a "mandatory instruction", 2) the instruction invaded the jury's province by resolving a factual issue: the question of the speed limit at the accident site, 3) the weight of the evidence proved the speed limit at the scene was 40 miles per hour, 4) the trial court incorrectly interpreted IND.CODE 9–4–1–125(e) by concluding the absence from the state highway department's records of a resolution regulating the speed limit on State Road 340 was conclusive proof that the maximum speed limit was 55 miles per hour.

Although the Guardian challenges an instruction, our review reveals that the underlying issue is the propriety of a partial judgment on the evidence that was granted on Bunch's motion at the close of all the evidence. The Guardian had alleged Bunch was negligent because she was exceeding a 40 miles per hour speed limit applicable to the collision site, an attempt to prove statutory negligence or negligence per se. Primarily relying on I.C. 9–4–1–125(e), the trial court decided the state had not chosen to restrict the maximum speed limit on State Road 340; therefore, the speed limit was whatever was reasonable and prudent, but a maximum of 55 miles per hour. The challenged instruction was given as a result of the judgment on the evidence.

Our standard of review for determining whether a motion for judgment on the evidence was properly granted is the same standard utilized by the trial court in making its decision. We look only to the evidence and reasonable inferences therefrom most favorable to the non-moving party. The motion should be granted only where there is a complete failure of proof, that is where there is no substantial evidence or reasonable inference from the evi-

dence supporting an essential element of the claim. *A.A.A. Exteriors v. Don Mahurin Chevrolet,* (1981) Ind.App., 429 N.E.2d 975. Neither this court nor the trial court may weigh conflicting evidence when examining a motion for judgment on the evidence. *Huff v. Travelers Indem. Co.,* (1977) 266 Ind. 414, 363 N.E.2d 985.

The gist of the Guardian's argument is that the trial court weighed conflicting evidence. The Guardian argues it at least made a prima facie case that the speed limit at the collision site was 40 miles per hour; therefore, it also argues the jury should have resolved the issue and could have found the speed limit was 40 miles per hour. The Guardian contends it complied with the criteria of I.C. 9-4-1-125(e). The relevant parts of the statute read:

(e) Whenever under the provisions of this chapter the department of highways is empowered to designate or determine the location of, necessity for, and extent of:

.    .    .    .    .

(2) State speed zones, section 57(b) [9-4-1-57] of this chapter; such designation or determination shall be by order of the director of the department of highways and shall except for item (1) be evidenced by official signs or markings as provided in this chapter.

.    .    .    .    .

On the trial of any person charged with the violation of the restrictions thus imposed and in all civil actions, oral evidence of the location and content of such signs or markings shall be *prima facie evidence* of the adoption and application of such restriction by the department of highways and the validity thereof. The department of highways shall upon request by any party in any action at law furnish, under seal of the commission, a certified copy of the order establishing the restriction in question which shall be accepted by any court as *conclusive proof* of such designation or determination by the director of the department of highways. Such certified copies shall be furnished without cost to the parties to any court action involving such restriction upon request. (Emphasis added).[1]

The evidence favorable to the Guardian's case and uncontradicted evidence shows that on August 15, 1979, Bunch was driving west on State Road 340 and going to work in Terre Haute. According to her own testimony, she was driving 45 to 50 miles per hour in a 40 miles per hour zone. She had passed several signs which indicated the speed limit was 40 miles per hour. The last of the signs was 2950 feet east of the collision site. The next sign was approximately two miles beyond the accident site to the west. Weber rode his bicycle from a private drive south across the road. Bunch explained she did not see Weber until immediately prior to hitting him at which time she applied her brakes and swerved to the left. According to expert testimony introduced by the Guardian, based upon an analysis of the accident site and damage, Bunch was traveling at 60 miles per hour. Evidence was also introduced that there was an unobstructed view from the east toward the collision site for a distance of 400 feet.

In addition, regarding the alleged 40 miles per hour speed limit, the Guardian introduced evidence of 18 speed limit signs between Brazil, located east of the accident and Cloverland located west of the site. Thirteen of these signs specified a speed of 40 miles per hour and two indicated a 30 miles per hour limit. The Guardian contends the latter evidence satisfied the requirements for a prima facie case in subsection 125(e).

In response, Bunch introduced a certified statement made by the records deputy of

---

1. The act was amended after this cause of action arose. The words "department of highways" were substituted for "state highway commission". The words "order of the director of the department of highways" were substituted for "resolution of the commission" and the word "order" was substituted for "resolution". P.L. 74, 1980. These changes did not affect the statute for our purposes.

the Indiana Department of Highways which reads:

OFFICERS OF THE INDIANA DEPARTMENT OF HIGHWAYS

I, the undersigned, Daniel A. Novreske, Deputy Director of Highway Administration, Department of Highways, hereby certify that I am the duly authorized custodian of the files and records of the department and that a search of our files fails to reveal any Department Resolution regulating speed on SR 340 in Clay County, Indiana on August 15, 1979.

The trial court relied on subsection 125(e) and accepted this statement as conclusive proof to decide that the department had not regulated the speed limit on State Road 340.

The Guardian argues subsection 125(e) was only intended to apply to situations where a restrictive limit has been adopted by the highway department. In support of this viewpoint, it claims the trial court's interpretation conflicts with IND.CODE 34–3–17–1 *et seq.* and Ind.Rules of Procedure, Trial Rule 44(B).

■ The trial court did not err in its interpretation of IND.CODE 9–4–1–125(e) and did not invade the jury's province by granting judgment on the evidence on the issue of the alleged violation of a 40 miles per hour speed limit. The Guardian has focused on one part of subsection 125(e) without considering the whole subsection and its relationship to other parts of Indiana's highway act.

IND.CODE 9–4–1–57 pertains to speed regulations and establishes a maximum lawful speed on Indiana's highways of 55 miles per hour in non-urban areas. IND.CODE 9–4–1–58 pertains to alterations of this limit and other limits by local authorities. Subsection (d) of section 58 curtails the localities's power to alter speed limits on state highways in the following language:

(d) Local authorities *shall not have power to alter speed limits on any highway or extension thereof in the state highway system* except that incorporated cities and towns may establish speed limits on state highways upon which a school is located: Provided, That such limit shall only be valid if (1) the limit is not less than [20] miles per hour, (2) the limit is imposed only in the immediate vicinity of the school, (3) children are present, (4) if the speed zone is property signed, and (5) the department of highways has been notified of the limit imposed, by registered or certified mail. (Emphasis added).

The state's authority to regulate speed limits on its highways, apart from the ultimate maximum limit specified in I.C. 9–4–1–57, is entrusted to the highway department. IND.CODE 9–4–1–61 gives the department authority to establish state speed zones after conducting engineering studies. This section provides the speed limits shall be effective when the appropriate signs giving notice of them are erected. Subsection 125(e) provides these speed limits shall be designated or determined by an order of the highway department's director.[2]

Therefore, the maximum speed limit on our state highways is either 55 miles per hour, I.C. 9–4–1–57, or it is set by the highway department pursuant to the procedures in subsection 125(e) and the power conferred by I.C. 9–4–1–61. In this context, there was no factual question for the jury in the case at bar. Absent a restrictive order or resolution, the speed limit on State Road 340 was 55 miles per hour.

The language in subsection 125(e) pertaining to prima facie proof of a speed limit parallels the common law evidentiary presumption that such signs have been lawfully erected. *See, Stull v. Davidson,* (1955) 125 Ind.App. 565, 127 N.E.2d 130. Without more proof, evidence of the signs would be sufficient to get the issue to the jury and to support a judgment on appeal. However,

---

**2.** Formerly by resolution of the highway commission, but the recording procedures are the same.

evidence of the actual highway department resolution is *conclusive proof* of a restriction. I.C. 9–4–1–125(e). Again, without a restriction, the speed limit is the maximum pursuant to I.C. 9–4–1–57, 60, and 125(e). Thus, although subsection 125(e) does not specifically state that the lack of a resolution or order is conclusive proof, there is no other alternative within the statutory scheme. For example, the situation is not analogous to an unrecorded mortgage. Obviously a valid mortgage may exist without being recorded. If it is unrecorded, the lack of a record effects notice to subsequent purchasers. In contrast, in this case, if there is no director's resolution or order, then no restriction exists.

Likewise, I.C. 34–3–17–1 and 2, and T.R. 44(B) do not support the Guardian's contention that there was evidence for the jury to weigh. I.C. 34–3–17–1 provides that in the case of public records:

> [A] written statement signed by an officer or person having the custody of official records or books, or by his deputy, that after diligent search no record or entry of a specified tenor is found to exist in the records of his office, to which the seal of his office shall be annexed, if there be a seal, shall be admissible in evidence in any such civil proceeding, hearing or determination as prima facie proof of the lack of record or entry as therein specified.

I.C. 34–3–17–2 goes on to state:

> Proof of such lack of record or entry as provided in section 1 [34–3–17–1] of this chapter *shall not prevent the proof of any such official records or books or lack of entry therein by any method authorized by an applicable statute or* by the rules of evidence at common law and *this chapter shall be considered and construed as being supplemental thereto* and as giving an additional means of proof of the lack of such entry. (Emphasis added).

The language of section 2 clearly states it is a supplemental statute. The "applicable statute" in the case at bar is I.C. 9–4–1–125(e). Even if we assume a conflict be-

tween I.C. 34–3–17–2 and subsection 125(e), the specific statute prevails over the more general statute and we reach the same conclusion. *Clipp v. Weaver*, (1982) Ind. App., 439 N.E.2d 1189.

T.R. 44(B) also deals with proof of a "lack of record", however, the rule is aimed at alleviating admissibility problems related to the hearsay rule and at authentication problems. 3 W. HARVEY, INDIANA PRACTICE § 44.3 at 299 (1970) and Supp. at 48 (1983). These problems are not present in this case.

■ The trial court's actions also satisfied its duty to instruct the jury about the statutory standard or duty applicable to the defendant. When negligence per se or statutory negligence is alleged, the statutory duty is determined by the trial court as a matter of law. *Reuille v. Bowers*, (1980) Ind.App., 409 N.E.2d 1144; *Bd. of Com'rs. of Monroe Cty. v. Hatton*, (1981) Ind.App., 427 N.E.2d 696.

The trial court did not err by granting Bunch's motion for judgment on the evidence and did not err by giving its instruction which resulted from granting that motion.

Judgment affirmed.

NEAL, P.J., concurs.

RATLIFF, J., concurs with opinion.

RATLIFF, Judge, concurring.

I concur in the result reached in the majority opinion. However, I believe that opinion to be in error in holding the certified statement of the deputy director of highway administration that his search of the records of the department of highways failed to reveal any resolution regulating speed on Highway 340 was conclusive evidence of the non-existence of such a regulation.

The statute relied upon, IND.CODE § 9–4–1–125(e), provides that proof of the existence of speed zone signs "shall be *prima facie* evidence of the adoption and application of such restriction by the department of highways and the validity

thereof." The statute then provides that "a certified copy of the order establishing the restriction in question ... shall be ... conclusive proof of such designation or determination by the director of the department of highways." That statute does not provide that a certification by the keeper of the records that a search of such record reveals no such resolution is conclusive proof of no such resolution exists. The majority's conclusion that no other conclusion is possible is not plausible.

Because I.C. 9–4–1–125(e) fails to deal with the matter of the failure to find a record of such a resolution, resort to other statutes and rules must be had. IND. CODE § 34–3–17–1 provides:

> "[A] written statement signed by an officer or person having the custody of official records or books, or by his deputy, that after diligent search no record or entry of a specified tenor is found to exist in the records of his office ... shall be admissible in evidence in any ... civil proceeding ... as prima facie proof of the lack of record or entry as specified".

Indiana Rules of Procedure, Trial Rule 44(B) provides that "a written statement that after diligent search no record or entry of a specified tenor is found to exist ... is admissible evidence that the records contain no such record or entry."

It was the plaintiff's burden to prove the existence of the speed limit. By producing evidence of the existence of the speed limit signs, a prima facie case of the existence and legality of the speed limit was made. The burden of going forward with the evidence was thereby shifted to the defendant to meet plaintiff's prima facie case. This, the defendant did by making a prima facie case that no proper resolution existed, thereby shifting the burden back to plaintiff to produce evidence of the legality of the speed limit declared by the signs. This prima facie showing of no resolution was not met by plaintiff.

When a party with the burden of proof makes a prima facie case, the burden of going forward with the evidence to explain away the case shifts to his adversary. 29

Am.Jur.2d *Evidence* § 126 (1967). But, to overcome a prima facie case, the opponent need only meet it, he does not have to defeat it by a preponderance on the greater weight of the evidence. 29 Am.Jur.2d *Evidence* § 1165. "It is sufficient if the defendant's evidence equalizes the weight of the plaintiff's evidence, or in other words, put the case in equipoise." *Id.* If the case is left in equipoise, the party with the burden of proof (the plaintiff here) must fail. *Id.* The defendant is never required to negate the plaintiff's prima facie case by a preponderance of the evidence, and the party having the burden of proof cannot prevail if the evidence is evenly balanced. 13 I.L.E. *Evidence* § 324 (1959).

The situation here is one of equipoise, that is evenly balanced evidence on the issue of the existence of a legal speed limit. Plaintiff's prima facie case derived from the existence of the speed limit signs was met equally by defendant's prima facie proof of the lack of a proper resolution. Thus, there was no question for the jury to resolve. Plaintiff failed to prove a 40 mile per hour speed limit, and the court's instruction was proper.

Therefore, I concur.